UNITED STATES, Appellant,

v.

Roosevelt JOHNSON, Private First Class,
U.S. Army, Appellee.

No. 28,671.

U. S. Court of Military Appeals.

May 9, 1975.

*Captain John T. Willis* and *Captain Michael R. Caryl* argued the cause for Appellee, Accused. With them on the brief was *Colonel Victor A. DeFiori.*

*Lieutenant Colonel Ronald M. Holdaway* argued the cause for Appellant, United States.

## OPINION OF THE COURT

FERGUSON, Senior Judge:

A dismissal of all charges and specifications by the Army Court of Military Review for lack of a speedy trial has prompted the Judge Advocate General of the Army to certify the following two questions pursuant to Article 67(b)(2), Uniform Code of Military Justice, 10 U.S.C. § 867(b)(2).

WAS THE COURT OF MILITARY REVIEW CORRECT IN DETERMINING THAT THE ACCUSED'S SUBSEQUENT MISCONDUCT DID NOT DEPRIVE HIM OF THE BENEFIT OF THIS HONORABLE COURT'S RULE IN *UNITED STATES V. BURTON* WHICH REQUIRES THE PROSECUTION TO SUSTAIN AN EXTRA-HEAVY BURDEN OF SHOWING DILIGENCE WHERE THE ACCUSED IS CONFINED FOR MORE THAN 90 DAYS PRIOR TO BEING BROUGHT TO TRIAL?

WAS THE ARMY COURT OF MILITARY REVIEW CORRECT IN DISMISSING THE ADDITIONAL CHARGE AND ITS SPECIFICATIONS, OFFENSES ON WHICH THE ACCUSED WAS BROUGHT TO TRIAL, WITHIN THE LIMITS PRESCRIBED BY *UNITED STATES V. BURTON*?

As the accused's case came before the Court of Military Review, he stood convicted by a general court-martial convened at Fort Riley, Kansas, of disrespect, assault (two specifications), failure to obey, and using provoking language to a superior non-commissioned officer, as well as disrespect to a superior commissioned officer, in violation of Articles 89, 91, 92, and 117 UCMJ, 10 U.S.C. §§ 889, 891, 892, and 917. The majority of these offenses allegedly occurred on or before November 10, 1972, the day on which the accused was placed in pretrial confinement. Only one of the assaults and the failure to obey occurred later. Those offenses grew out of an incident in the stockade on December 16, 1972. As a result of these findings, the accused was sentenced by the military judge hearing the case to a bad-conduct discharge, confinement at hard labor for 9 months, total forfeitures, and reduction to pay grade E-1. The convening authority, in otherwise approving that sentence, originally suspended the bad-conduct discharge for a period of 12 months. That suspension was subsequently vacated, however, before the case was acted upon by the Court of Military Review.

After the accused's arraignment at trial on March 8, 1973, his trial defense counsel, relying on the fact that the accused had then been in pretrial confinement for a period of 118 days, made a timely motion to dismiss all charges and specifications for lack of a speedy trial. In attempting to carry its burden on that motion, the prosecution introduced a stipulation of fact and produced one witness, whose testimony only related to certain matters occurring prior to the accused's pretrial confinement. After evaluating that evidence and hearing the arguments of counsel thereon, the military judge denied the motion, observing that no delay was so prolonged as to warrant dismissal nor was there any indication of bad motive on the part of anyone.

On appeal before the Army Court of Military Review, the accused again asserted that he was denied the right to a speedy trial and claimed that the military judge erred in denying his motion. Finding merit in this assignment, the Court of Military Review noted that the accused's case actually involved separate sets of charges occurring on different dates and that each set accordingly had a different starting time for the purpose of determining the Govern-

ment's burden under our decision in *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1972).

█ This determination of separability for the purpose of computing the Government's accountability has long been recognized by this Court, both before and after our decision in *Burton*.[1] For those cases, like the one at bar, where an accused is already confined on one set of offenses on which the Government's accountability has already begun to run, *United States v. Johnson*, 23 U.S.C.M.A. 91, 48 C.M.R. 599 (1974), provides the test for determining when the Government becomes accountable on subsequently committed or discovered offenses. In that case, we stated "that the delay should commence when the Government had in its possession substantial information on which to base the preference of [those additional] charges."[2]

█ With the accused's confinement on the originally preferred offenses here commencing on November 10, 1972, the Court of Military Review correctly concluded that the Government's accountability with respect to those offenses extended from that date until the date of trial, a period of 118 days. As to those offenses later occurring in the stockade on December 16, 1972, the Court of Military Review determined that the Government became accountable from that date forward and that 82 days were thus chargeable to it for those offenses. Since the record affirmatively reflects that the Government indeed had substantial information on which to prefer those charges growing out of the incident at the stockade messhall on the date of their commission, this determination of an 82-day accountability was likewise proper.

In thereafter separately addressing itself to the question of speedy trial as it applied to each set of charges, the Court of Military Review first observed that since the Government was accountable for 118 days on the original offenses, there was under *Burton* a heavy burden to show diligence. Although recognizing that the commission of intervening offenses and the preferral of additional charges in certain cases may amount to such an extraordinary circumstance as to otherwise justify a delay beyond 90 days under the standards laid down in *United States v. Marshall*, 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973), the Court of Military Review held.[3]

We do not think the intervening offenses were of such a serious or complex nature as to amount to "extraordinary circumstances" in this case. They were relatively uncomplicated assault and disobedience offenses arising out of a minor disagreement in the stockade messhall. Few witnesses were involved and all were readily available. The principal delays in this case occurred not before or during the investigation of the additional charges but after the original and additional charges were received in the office of the staff judge advocate. It took 25 days to prepare the pretrial advice and another 34 days to bring the case to trial. The Government did not satisfactorily explain these unreasonable delays. We conclude, therefore, that the Government did not meet its heavy burden to show diligence in the processing of Charges I, II and III. Those charges must be dismissed.

The first certified question now calls upon us to determine whether the Court of Military Review was correct in finding that the *Burton* presumption of a denial of speedy trial was even available to this accused in view of his subsequent misconduct in the stockade. The Government, both in its brief and in argument before this Court, has taken the position that we should adopt

---

1. *Compare United States v. Marell*, 23 U.S.C.M.A. 240, 49 C.M.R. 373 (1974) and *United States v. Mosley*, 22 U.S.C.M.A. 515, 47 C.M.R. 932 (1973), *with United States v. Mohr*, 21 U.S.C.M.A. 360, 45 C.M.R. 134 (1972) and *United States v. Mladjen*, 19 U.S.C.M.A. 159, 41 C.M.R. 159 (1969).

2. 23 U.S.C.M.A. at 93, 48 C.M.R. at 601.

3. *United States v. Johnson*, 49 C.M.R. 13, 15 (1974) (footnotes omitted).

a rule which would allow it to set off, on a day-for-day basis, all delays allegedly caused, either directly or indirectly, by any subsequent misconduct on the part of an accused which may give rise to the possibility of additionally preferred offenses. Although conceding that the accused was indeed continuously confined on the originally preferred offenses for 118 days prior to trial, the Government urges that the Court of Military Review erred by failing to deduct from that period not only the 21 days which were taken to process, investigate and forward the additional charges, but also a considerable—albeit undefined—portion of the subsequent 30 days which were consumed by the writing of the pretrial advice on all preferred offenses. Maintaining that such an arithmetical computation is the only realistic means of determining the effect of the accused's subsequent misconduct, the Government would calculate the remaining delay for which it was accountable as less than 90 days.

■ In order to adopt and apply this theory as advanced by the Government, however, several assumptions, none of which are supported by the record, would have to be made. The Government's argument presupposes, for example, that the accused would have been tried on the original offenses within 90 days but for his subsequent misconduct. Although there is nothing in the record to support such a claim, the Government seeks to overcome this deficiency by subtracting from this overall period, on a day-for-day basis, all delays supposedly caused by that subsequent misconduct. The crucial difficulty with this formulation, however, as readily manifest from the Government's own attempt to apply it, is that the time which would now be attributed to the accused for his alleged misconduct cannot realistically

be determined with any degree of mathematical certainty susceptible to a day-for-day computation.[4] Of even greater significance, moreover, is the fact that the day-for-day deduction formula ignores the separability of the Government's accountability. For the prosecution would not have to do anything during the period it would now deduct from its overall accountability in terms of bringing the charges upon which the accused was originally placed in pretrial confinement to a timely disposition. As here so advanced, we thus view this suggested formulation as not only unsupported by the record and unworkable, but also manifestly contrary to the intent of *Burton*.

When reiterating the *Burton* principles and their application in *United States v. Brooks*, 23 U.S.C.M.A. 1, 2, 48 C.M.R. 257, 258 (1974), a case in which an accused's 100 days of pretrial confinement was not continuous and in which he was twice reconfined on the basis of his own misconduct, we stated, "[I]t is the period of confinement with which we are concerned and not the basis on which it was ordered." Absent an extraordinary reason for additional delays as explained in *United States v. Marshall, supra,* we perceived no other way to enforce the congressional mandate of Article 10, UCMJ, 10 U.S.C. § 810, which requires speedy disposition in the case of a confined accused.

■ We conclude, therefore, that the Court of Military Review was correct in finding that the *Burton* presumption of a denial of speedy trial was applicable to the original offenses on which the accused was confined for 118 days and in thereafter considering whether extraordinary circumstances were shown by the Government to justify a delay beyond 90 days. This approach, in our view, is the only effective means of insuring compliance with the con-

4. What we stated in *United States v. Reitz*, 22 U.S.C.M.A. 584, 585–86, 48 C.M.R. 178, 179–80 (1974), bears repeating here:

If there are extraordinary circumstances or unusual difficulties in prosecuting a particular case, the *Government should make them a matter of record in replying to a defense motion for dismissal of the charges. Similar-

ly, if there is in fact defense agreement to delay of the prosecution it also should be noted on the record. Only under such circumstances will this Court be able to make a proper resolution of the issue. Appellate argument, however well-intentioned, cannot be substituted for the facts.

gressional mandate. While we also have recognized, as did the court below, that the commission of additional misconduct may in an appropriate case amount to extraordinary circumstances within the meaning of *Marshall* sufficient to overcome the *Burton* presumption,[5] we agree fully with the Court of Military Review that no valid reason is presented in this case to otherwise justify the Government in either slowing or ignoring the processing of the originally preferred charges.

In so holding, we are not unaware of the announced Manual policy which provides that all known charges against an accused, if tried at all, should ordinarily be tried in a single trial. Manual for Courts-Martial, United States, 1969 (Rev.), paragraph 33*h*. But, as we recently held in *United States v. Ward*, 23 U.S.C.M.A. 391, 50 C.M.R. 273, 1 M.J. 21 (1975), this policy is not unyielding:

> The Manual provision is only a statement of policy; the speedy disposition of charges for which an accused is confined is a command of Congress. When a provision of the Manual collides with a provision of the Uniform Code, the former must yield to the latter. *United States v. Smith*, 13 U.S.C.M.A. 105, 32 C.M.R. 105 (1962); *United States v. Davis*, 11 U.S.C.M.A. 407, 29 C.M.R. 223 (1960).

Upon finding that a defense demand for speedy trial had been made on the 89th day of confinement, the Court of Military Review dismissed the additional charges even though those charges were not subject to the *Burton* 90-day rule because only 82 days of pretrial confinement were attributable to them. Although noting that the Government had initially responded promptly to that demand by setting a trial date for 2 weeks later, the Court of Military Review also found that the trial was subsequently delayed an additional 2 weeks, allegedly because of a crowded trial docket. Relying

on the second facet of our *Burton* opinion, the Court of Military Review held that, in view of the 29 days that elapsed after the accused had submitted his demand for a prompt trial, the Government had neither proceeded immediately nor shown adequate cause for that delay. In making this determination, the Court of Military Review, in order to put the defense demand in its proper perspective, examined not only the period between the demand and trial but also the period that preceded the demand, and concluded.[6]

> Appellant had been in pretrial confinement 89 days at the time he submitted his demand for trial, 59 of these days having elapsed after commission of the offenses alleged in the Additional Charge. Charges had been in the staff judge advocate's office for a month when the appellant made his demand, and considering the lengthening pretrial confinement, the prosecutor should have been completely familiar with the case. As shown from the stipulated chronology, the delay between demand and trial was caused primarily by the congestion of the trial docket. Contributing were the TDY and emergency leave of the resident judge. Another judge was finally brought in to hear the case. In the absence of a showing that no other judges were available to try the case on 23 February 1973, the originally scheduled trial date, or that the docket could not have been rearranged to accommodate this trial, we conclude that the Government did not show adequate cause for delay. *Cf. United States v. Reitz*, 22 U.S.C.M.A. 585, 48 C.M.R. 179 (1974).

That portion of our *Burton* decision relied upon by the Court of Military Review, but often forgotten or ignored, dealt specifically with those situations like the one at bar in which the defense alertly avoids what

5. *Compare United States v. Brooks*, 23 U.S.C.M.A. 1, 48 C.M.R. 257 (1974), *with United States v. O'Brien*, 22 U.S.C.M.A. 557, 48 C.M.R. 42 (1973), where we held that the Government was not accountable for the delay that had occurred either prior to or during the time that an accused, who once released from confine-

ment, absented himself from military jurisdiction, since the Government, of necessity under those circumstances, was unable to process the charges against him until his return.

6. *United States v. Johnson, supra* at 16.

**106**

could otherwise be a waiver of a speedy trial issue by urging a prompt disposition of the charges. In holding that the Government was on notice that any delays from that point forward were subject to close scrutiny, the *Burton* opinion further provided: [7]

> [T]he Government must respond to the request and either proceed immediately or show adequate cause for any further delay. A failure to respond to a request for a prompt trial or to order such a trial may justify extraordinary relief.

Unlike the remedy of a mandatory dismissal applicable to those cases in which the pretrial confinement exceeded 90 days, this portion of our *Burton* decision did not specify the relief to be granted. The Court of Military Review recognized this distinction and indicated that the possible remedy for a failure to respond to a demand and to grant a prompt trial may vary depending upon the circumstances of each individual case. It held, however, that a dismissal of the additional charges in the instant case was appropriate because the 82 days of pretrial confinement there approached the 90-day mark, the offenses were relatively simple with the witnesses readily available, and there was no showing of the unavailability of another judge or an impossibility to reschedule the trial.

The Government argues, however, pursuant to the second certified question, that the Court of Military Review erred in dismissing the additional charges, especially since the accused was brought to trial on those charges within the *Burton* 90-day limit. The Government further maintains that the Court of Military Review erred in determining that this was an extraordinary case and in dismissing it without regard to prejudice.

These arguments again miss the point of our holding in *Burton*, where we attempted to provide notice that a close examination of the Government's diligence would be made not only in those cases where the pretrial confinement exceeded 90 days but also in those in which a confined accused

had demanded a prompt disposition of the charges against him.

It does not automatically follow that any delay of less than 90 days on additionally preferred and consolidated offenses is reasonable, particularly where the Government is put on notice by a demand for a speedy trial on all pending charges. The Government has no license to proceed on any charges, original or additional, initial or subsequent, in a leisurely fashion. *See United States v. Ward, supra; United States v. Johnson, supra.*

From our examination of the record, it is apparent that the Court of Military Review gave careful consideration to the totality of the delay on the additionally preferred offenses, particularly insofar as that delay related to the Government's showing of diligence both before and after the accused made his demand for a speedy trial. In view of these facts, particularly in light of the Court of Military Review's findings thereon, we fully agree that the Government failed to show adequate cause for the delay in preferring, consolidating and trying the additional offenses. Under these circumstances, a dismissal of those additional charges was not inappropriate as a matter of law.

We accordingly answer both certified questions in the affirmative and affirm the decision of the Court of Military Review.

Judge COOK concurs.

Chief Judge FLETCHER did not participate in the decision of this case.

---

7. 21 U.S.C.M.A. at 118, 44 C.M.R. at 172.