UNITED STATES

v.

Private (E–2) Bernard A. TERRY, 130–46–5921, US Army, Company C, 46th Engineer Battalion, 194th Armored Brigade, Fort Knox, Kentucky.

CM 434172.

U. S. Army Court of Military Review.

Sentence Adjudged 26 Sept. 1975.

Decided 30 June 1976.

Appellate Counsel for the Accused: CPT Michael B. Dinning, JAGC; CPT John C.

Carr, JAGC, MAJ Joe D. Miller, JAGC; COL Alton H. Harvey, JAGC;

Appellate Counsel for the United States: CPT Gay M. Holmes, JAGC; CPT William C. Kirk, JAGC; MAJ Steven M. Werner, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

COOK, Judge:

Appellant was convicted of robbery, alleged as a violation of Article 122, Uniform Code of Military Justice (10 U.S.C. § 922), and received an approved sentence as noted above. The sole assignment of error on this appeal is an assertion that appellant was denied his right to a speedy trial. More particularly, appellate defense counsel contends as did trial defense counsel, that the facts in this case constitute a second-prong-of-*Burton* violation.[1]

On 29 June 1975, appellant and one Coopwood robbed another soldier at gunpoint. They were apprehended by the military police within minutes of the act and incarcerated.[2] Later that same day appellant confessed in writing to his part in the crime. The charge against appellant was preferred the next day, 30 June 1975. On 14 July 1975, the charge sheet and allied papers arrived at the office of the staff judge advocate. Two days later these documents were returned to, and four days later they were received by, the Brigade Commander with instructions to conduct an Article 32, UCMJ, 10 U.S.C. § 832, investigation. Some three days thereafter, on 21 July 1975 (22 days after appellant's imprisonment and confession), an Article 32 investigating officer was appointed.

Inquiry by the investigating officer on 23 July 1975 revealed that the victim of the robbery was on leave prior to reporting to an overseas replacement station for reassignment to Europe. That same date the appellant waived, in writing, his right to the Article 32 investigation. The investigating officer testified at trial that he had been informed by the defense counsel at the time of the waiver that the purpose of the waiver was to expedite the case to trial.

Nevertheless, the investigating officer decided to delay the completion of his report until after the victim could be located and returned and he had an opportunity to interview him under oath. This finally occurred on 15 August 1975, 25 days after his appointment and 46 days after appellant's confession and confinement. The investigating officer prepared his report that same day.

In the meantime, on 1 August 1975, the appellant and his counsel had negotiated a guilty plea agreement with the staff judge advocate for submission to the convening authority for his acceptance at the "earliest practicable time." Nothing was done with this written request until 16 September 1975.

■ On 27 August 1975, the appellant submitted a written demand for immediate trial. Seven days later the convening authority referred the case to trial,[3] and, although defense counsel stated he was ready to proceed to trial on 4 September 1975, the case was docketed for 15 September 1975, 20 days after the formal demand for trial.[4]

---

1. In *United States v. Burton*, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971), the United States Court of Military Appeals, in addition to the widely recognized 90-day rule, also announced that in those instances where the defendant makes a demand for speedy trial a special duty is placed on the Government to ". . . respond to the request and either proceed immediately or show adequate cause for any further delay." 21 U.S.C.M.A. at 118, 44 C.M.R. at 172.

2. He remained in this status for 80 consecutive days, *i. e.*, till 16 September 1975, the day following his arraignment.

3. The convening authority was not informed at this time of either the appellant's offer to plead guilty or of his demand for immediate trial. As to the demand for trial, the convening authority was not apprised of its existence until he read the post-trial review.

4. It is noted that on 15 September an Article 39(a), 10 U.S.C. § 839(a), session of less than a one hour duration was held at which appellant plead not guilty. *Compare United States v. Beach*, 23 U.S.C.M.A. 480, 50 C.M.R. 560, 1 M.J. 118 (1975), with *United States v. Marell*, 23 U.S.C.M.A. 240, 49 C.M.R. 373 (1974), on

■ As we do not consider a delay of 20 days as proceeding "immediately" to trial, we will look to see if there was "adequate cause" for the delay.

■ The leading case in the application of the second-prong rule is *United States v. Johnson*, 23 U.S.C.M.A. 397, 50 C.M.R. 279, 1 M.J. 101 (1975). There the United States Court of Military Appeals placed its imprimatur on the approach taken by the Court of Review in examining the record for a ". . . showing of diligence [by the Government] *both before and after* the accused made his demand for a speedy trial." (Emphasis supplied).[5]

At the time of his formalized demand for trial appellant had been in pretrial confinement for 60 days. The facts in his case were anything but complex. There was one eyewitness to the crime, and the Government had obtained appellant's confession. Almost from the outset the Government's handling of this case was, at best, slipshod.

Off to a good start with the preferral of charges the day after the crime, matters deteriorated seriously thereafter. Two weeks elapsed before these charges arrived at the office of the staff judge advocate. In spite of Article 33, UCMJ, 10 U.S.C. § 833, paragraph 34c, Manual for Courts-Martial, United States, 1969 (Revised edition) (MCM 1969 (Rev)), and a local implementing regulation, no explanation for this delay was contained in the file.

■ Due primarily to the fact that the Government permitted the victim to depart the post on a permanent change of station, the Article 32 investigating officer took 25 days to complete his investigation. This is unconscionable in a case of inordinate factual simplicity such as this.[6]

Thereafter, it took the staff judge advocate nine days to prepare and present his two-page pretrial advice.

The docketing judge, aware that appellant had been in pretrial confinement for an extended period, that he had made a request for immediate trial and further, that he was prepared to go to trial at once, made no attempt to readjust the trial calendar or obtain a substitute judge. Rather he set the trial for a date ten days later.

Infused throughout are clear indications by the appellant that he was prepared to bring this matter to speedy resolution. He made at least three explicit attempts in this regard. He waived his rights to the Article 32 investigation for the announced purpose

---

the question as to whether the Article 39(a) session in this case "terminated" the pretrial confinement for *Burton* rule purposes. The Government was still not ready to try appellant on 15 September and the case was put over until 19 September or 23 days after the demand for immediate trial. Appellant was, however, released from confinement on 16 September. Under the rationale of *United States v. Mock*, 49 C.M.R. 160 (A.C.M.R.1974), the Government's strict accountability was tolled thereby.

5. *United States v. Johnson, supra*, 23 U.S.C.M.A. at 402, 50 C.M.R. at 284, 1 M.J. at 106. This language would seem to establish a different test than the one outlined in *United States v. Burton, supra*. There we find at 21 U.S.C.M.A. 117, 44 C.M.R. 171, "When the defense alertly avoids what could otherwise be a waiver of the speedy trial issue by urging prompt trial, the Government is on notice that delays *from that point forward* are subject to close scrutiny and must be abundantly justified." (Emphasis supplied). However, we believe the two criteria are compatible. In trying to determine whether the Government has shown an adequate cause for any delay in complying with a demand for immediate trial, it may be necessary to examine what it has done to prepare the case for trial prior to such demand. In other words, was the post-demand delay occasioned by pre-demand failures? "It is only when we look at the earlier period that the subsequent one is put in perspective." *United States v. Johnson*, 49 C.M.R. 13 (A.C.M.R.1974) at 16.

6. This IO was conducting a simultaneous Article 32 investigation as to appellant's co-accused. However, it was because he insisted on talking to the victim that the report was delayed. No matter how warranted his decision in this regard may have been in the case of the co-accused (who had not confessed) it cannot be used to justify the delay in appellant's case. *United States v. Johnson*, 24 U.S.C.M.A. 147, 51 C.M.R. 337, 1 M.J. 294 (1976). In any event, the fact that the victim was permitted to leave on PCS is inexcusable and is the root cause for the delay.

of expeditious handling.[7]  Secondly, he conferred with the staff judge advocate, apparently on acceptable terms about pleading guilty.[8]  While this act may not have been as unequivocal an expression of a desire for immediate disposition as was the waiver of the Article 32 investigation, it was nevertheless a distinct signal that appellant did not desire to engage in protracted litigation.[9]  And, when combined with the fact of the earlier requested waiver, it becomes a patently clear effort by the appellant to get to trial.  Failing all else, appellant made his third attempt in submitting a demand for immediate trial.

■ From the foregoing this Court concludes that the Government has not shown adequate cause for the delay in this case.[10]

Unlike the remedy when the 90-day prong of the *Burton* decision is violated, dismissal of charges is not mandated in this instance.[11]  We must look to the totality of the situation in arriving at an appropriate remedy.[12]

Having done so the Court affirms the findings of guilty and approves so much of the sentence as provides for a bad-conduct discharge.

Senior Judge BAILEY concurs.

7.  We do not hold that the Government is obligated to accede to such a waiver and terminate its investigation.  As was said in *United States v. Cunningham*, 12 U.S.C.M.A. 402, 404, 30 C.M.R. 402, 404 (1961), the Article 32 investigation ".  .  . is an important pretrial right from the standpoint of the accused and, at the same time, affords many benefits to the Government."  We find the waiver important because it was an unmistakable signal that appellant desired a hasty settlement and because the Government totally failed to react thereto.

8.  See the earlier textual material on this subject.  It is bottomed on a stipulation of fact contained in the record.  Although affidavits on this subject were requested and submitted, nothing contained therein alters the facts related in the text.

9.  As noted earlier, although submitted to the staff judge advocate on 1 August, after a promise that it would be presented to the convening authority "as soon as practicable" it was not in fact presented to him until 16 September.  Even allowing for the fact that such negotia-

DeFORD, Judge, dissenting:

I dissent.

I believe the majority opinion in this case has misapplied the law to the facts in this case.

In *United States v. Burton* [1] the United States Court of Military Appeals held that, "when the defense requests a speedy disposition of the charges, the Government must respond to the request and either proceed immediately or show *adequate* cause for any further delay.  A failure to respond to a request for a prompt trial or to order such a trial may justify extraordinary relief.  See *Petition of Provoo*, D.C., 17 F.R.D. 183, 200 (1955), affirmed, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955)."

An examination of the citation to *Provoo, supra*, would appear to indicate the rule was based upon the court's viewpoint that it possessed the inherent power to dismiss a case or take other action on the findings and/or sentence for want of prosecution when there is unnecessary delay in bringing an accused to trial.

In *United States v. Johnson* [2] this Court considered a situation in which there was a speedy trial issue involving two separate

tions are not normally culminated until after referral, *i. e.*, 3 September, we still find that an inordinate amount of time elapsed before it was presented to the convening authority.  This is yet another indication of the Government's unconcerned and lax approach to this case.

10.  "And administrative bungling is certainly not an adequate explanation," *United States v. Burton, supra*, 21 U.S.C.M.A. at 122, 44 C.M.R. at 176 (Senior Judge Ferguson's dissent).

11.  "A failure to respond to a request for a prompt trial or to order such a trial may justify extraordinary relief."  *United States v. Burton, supra*, 21 U.S.C.M.A. at 118, 44 C.M.R. at 172; *United States v. Gordon*, 2 C.M.R. 517 (A.C.M.R. 20 Feb. 1976).

12.  *United States v. Gordon, supra.*

1.  21 U.S.C.M.A. 112, 118, 44 C.M.R. 166, 172 (1971).

2.  49 C.M.R. 13 (A.C.M.R.1974).

sets of charges. The original charges required 118 days to process to trial. The additional charges required 82 days of that period. This Court dismissed both sets of charges under the *Burton* rules. The Court's action on the additional charges was based upon the second facet of the *Burton* rule. The appellant made a demand for speedy trial and the Court held that the Government responded promptly[3] by setting the case for trial two weeks later. A crowded docket caused an additional two weeks delay thus 29 days after the demand for trial was made the appellant was tried for the offenses charged.

This Court ordered the charges dismissed after determining that the Government had failed to show adequate cause for delay. This Court further noted that in making the determination to dismiss that it examined not only the period between the demand and trial but also the period that preceded the demand as they determined that only in that manner could the subsequent period (post-demand processing time) be placed in perspective.[4]

It is never permissible for the Government to proceed in a leisurely fashion in the processing of charges against an accused.[5] Where the Government is on notice of a demand for speedy trial, a close examination of the Government's diligence must be made.[6] In determining whether or not the Government was diligent, brief periods of inactivity in an otherwise active prosecution are not unreasonable or oppressive. The touchstone for measurement of compliance with provisions of the Code is not constant motion but reasonable diligence in bringing the charges to trial.[7]

Turning to the case before us, the appellant was placed in pretrial confinement on 29 June 1975 having been identified as a participant in a robbery. He had confessed to participation in the crime and was immediately charged with the offense with others. The charges and allied papers were received by the special court-martial convening authority on 7 July 1975 (9)[8] who endorsed them to the general court-martial

---

3. The term "promptly" was extracted from this Court's opinion in *United States v. Johnson, supra.* The Court was not concerned with the initial docketing date but apparently determined that the violation occurred by reason of the subsequent two-week delay after the original trial date was set.

4. Upon certification, the United States Court of Military Appeals affirmed the decision of this Court in *United States v. Johnson,* 23 U.S.C. M.A. 397, 50 C.M.R. 279, 1 M.J. 101 (1975), quoting with approval a portion of this Court's opinion as follows:

"Appellant had been in pretrial confinement 89 days at the time he submitted his demand for trial, 59 of these days having elapsed after commission of the offenses alleged in the Additional Charge. Charges had been in the staff judge advocate's office for a month when the appellant made his demand, and considering the lengthening pretrial confinement, the prosecutor should have been completely familiar with the case. As shown from the stipulated chronology, the delay between demand and trial was caused primarily by the congestion of the trial docket. Contributing were the TDY and emergency leave of the resident judge. Another judge was finally brought in to hear the case. In the absence of a showing that no other judges were available to try the case on 23 February 1973, the originally scheduled trial date, or

that the docket could not have been rearranged to accommodate this trial, we conclude that the Government did not show adequate cause for delay. *Cf. United States v. Reitz,* 22 U.S.C.M.A. 585, 48 C.M.R. 179 (1974)"

That court further commented with reference to the original *Burton* decision stating "we attempted to provide notice that a close examination of the Government's diligence would be made not only in those cases where the pretrial confinement exceeded 90 days but also in those in which a confined accused had demanded a prompt disposition of the charges against him. In addition, the court said that this "court gave careful consideration to the totality of the delay on the additionally preferred offenses particularly insofar as that delay related to the Government's showing of diligence both before and after the accused made his demand for speedy trial."

5. *United States v. Johnson, supra.*

6. *Id.* at page 283, 1 M.J. 101.

7. *United States v. Tibbs,* 15 U.S.C.M.A. 350, 35 C.M.R. 322 (1965).

8. For ease of discussion the total days consumed in pretrial processing will be shown in parenthesis where appropriate.

convening authority recommending a bad-conduct discharge special court-martial. The general court-martial authority directed the special court-martial convening authority to hold an Article 32 investigation (18) and the Article 32 investigating officer was appointed on 21 July 1975 (21). The Article 32 officer required that the victim who was enroute to an overseas assignment be returned to the post and testify concerning the charges. Two separate hearings were held on the case. All told, a period of 37 days was consumed in conducting the Article 32 investigation and producing the reports thereon.[9]

As the charges against Coopwood (a co-accused) and the appellant were initially consolidated, a report was rendered on each individual and returned to special court-martial convening authority who in turn forwarded them to the general court-martial authority on the 57th day. The appellant's counsel initially discussed the possibility of an offer to plead guilty with the staff judge advocate on 23 July 1975. Following this discussion appellant submitted an offer to plead guilty on 1 August 1975. During the period of discussion and including the date of the original submission, an Article 32 investigation convened by the special court-martial convening authority was in progress. This offer to plead guilty was not presented to the convening authority but was subsequently retyped on two occasions in order to change the signature block to accommodate a change in the general court-martial convening authority.

At the outset it might appear that the Government may have been negligent in not quickly processing the appellant's offer to plead guilty. However, the case had not yet arrived at the general court-martial level nor had any disposition been made as to the level of trial. It obviously was inappropriate to present an offer to plead guilty to any convening authority until after the case had been referred for trial. If such action had been taken, it could have been argued that the convening authority may have been swayed by the offer to plead guilty to refer a case to trial without fulfilling the requirements of paragraph 35b of the Manual.[10] In any case, the staff judge advocate did not present the matter and avoided a potential issue.

The fact that the offer to plead guilty was not presented to the convening authority until 16 September 1975 does not imply to this writer negligence or a lack of interest in the appellant's case. Convening authorities at large installations are not available at every moment. In any case the pretrial agreement was presented to the convening authority after the principal Article 39(a) session and prior to the beginning

---

9. The Article 32 officer was not a lawyer. The appellant and his co-accused Coopwood were processed together. However, the appellant waived the Article 32 investigation initially. At the time his waiver was received by the Article 32 investigator, the appellant also forwarded a request for witnesses and a few days were consumed sorting out the appellant's respective requests. The record reflects that the Article 32 investigator had some serious reservations concerning the evidence supporting the charges against this appellant. He investigated until he was satisfied that he had determined the appellant's degree of participation and that the charges were well founded. Undoubtedly, a lawyer could have performed the task within a shorter time period and expedited the case. In addition, it must be remembered that in the military criminal justice system the preliminary pretrial processing is conducted by military officers. Although legal advice is available upon request, there is no reason to believe that the commanders concerned in this case had a lawyer at their elbow. In addition, the Article 32 investigator's interest in determining the degree of appellant's participation in the crime could have been a material factor in the general court-martial convening authority's determination whether he would accede to the recommendation of the special court-martial convening authority for trial by a BCD special court-martial. In this instance, the Article 32 officer was meticulous in his endeavors and rendered an abbreviated report concerning the appellant notwithstanding his proffered waiver. As noted, this writer believes the Article 32 investigating officer performed his duties as required and demanded by the Uniform Code of Military Justice.

10. Paragraph 35b, Manual for Courts-Martial, United States, 1969 (Revised edition).

of the trial. I do not believe it had any bearing on the issue of delay.

The appellant made his demand for speedy trial on the 60th day and the demand was duly presented to the staff judge advocate who took it with him when he discussed the referral of the charges with the convening authority. However, the staff judge advocate did not specifically discuss the appellant's demand although he advised the convening authority that the case had to be tried rapidly. The convening authority referred the charges to trial on the 66th day. There was no reply in writing to the appellant's demand.[11] However, the trial counsel docketed the case for trial the following day (67). Trial was set and commenced 12 days later (79). A total of 19 days elapsed from the date the appellant made his demand for speedy trial. During this period a pretrial advice was written, an Article 39(a) docketing session was held, and the parties made their last minute preparations for trial.

In applying the foregoing rules to the facts in this case we are required to determine whether or not the Government has shown *adequate cause for delay*. In applying the second facet of the *Burton* rule I do not disagree with the view as expressed in footnote five of the majority opinion that the tests or criteria set forth in the opinions of the United States Court of Military Appeals in *Burton, supra,* and *Johnson, supra,* are compatible. However, at this point we part company. The majority opinion states that "In trying to determine whether the Government has shown an adequate cause for any delay in complying with a demand for immediate trial, it may be necessary to examine what it has done to prepare the case for trial prior to such demand. In other words, was the post-demand delay occasioned by pre-demand failures? It is only when we look at the earlier period that the subsequent one is put in perspective. *United States v. Johnson,* 49 C.M.R. 13 at 16." [12] The logical consequence of this application of the foregoing rule results in the appellate courts making a determination based essentially upon the pre-demand period of pretrial processing. In other words, if the pretrial processing in the pre-demand period indicates that certain required processing was not done as rapidly as it should have been and those actions preclude immediate trial after demand and result in delay, the appellate courts will then determine whether or not the Government has been diligent and their reasons for delay are adequately based on the *entire* pretrial processing of the case. I believe the foregoing to be an improper application of the law.

As I have heretofore noted, the second facet of the *Burton* rule is bottomed on the inherent power of the Court to dismiss or modify the finding and sentence based upon the Government's apparent failure to prosecute.

It is my view that the application of the majority opinion's rule of law in those cases in which a violation is found could only result in a determination of a lack of diligence during pretrial processing which in effect would constitute a violation of Article 10, UCMJ, requiring dismissal of the charges as a remedy.[13]

I believe that the second rule enunciated in *Burton* and as clarified in *Johnson, supra,* requires an examination of the Government's diligence in the *post-demand period* of the pretrial processing. A review of the pre-demand period is useful only for the limited purpose to explain or otherwise clarify the basis for the delay during the post-demand period.

11. Convening authorities should respond in writing to demands for speedy trial. Such responses not only advise an accused of the steps being taken to accommodate his desire to speed his case to trial but also places upon the record the steps and actions they have taken for the edification of the appellate courts.

12. Footnote 5, page 4, majority opinion.

13. *See United States v. Hubbard,* 21 U.S.C. M.A. 131, 44 C.M.R. 185 (1971).

The standard for diligence is not increased merely because a demand for speedy trial is made. The statement in *Johnson* that the Government is on notice that delays from that point forward are subject to close scrutiny and must be abundantly justified means only that the appellant having called attention to his desire for immediate trial the Government cannot delay such trial without reasonable cause.

Here, the Government tried the appellant within 12 days after his case was referred for trial and 19 days after his demand for trial. In *Johnson, supra,* the case was docketed for trial two weeks after the demand for speedy trial was made and the Court determined that such action was a *proper response.* As heretofore noted, only after a subsequent two week delay caused by docketing problems did the Court determine a violation of the second facet of the *Burton* rule had occurred in that case.

That type of factual situation is not before us in this case. Here, the Government moved as rapidly as was reasonable under the circumstances following the appellant's demand for trial to bring the appellant's case to trial.[14] I believe that they have shown adequate cause for the delay in this case and were generally diligent in the pretrial processing of this case. I would affirm the findings and sentence as approved by the convening authority. Accordingly, I must respectfully dissent.

---

**14.** I note that in virtually every case that we review on a speedy trial issue, the pretrial processing could have been expedited in some manner. The standard of diligence is that enunciated in *Tibbs, supra,* not whether the case could have been processed faster.