554

UNITED STATES

v.

Joseph Charles ZAMMIT, 385 72 0564,
Fireman Apprentice (E–2), U.
S. Navy.

NMCM 81 2447.

U. S. Navy-Marine Corps Court of
Military Review.

Sentence Adjudged 8 Sept. 1980.

Decided 30 June 1982.

CDR Matthew J. Wheeler, JAGC, USNR, Appellate Defense Counsel.

LT Philip J. Shebest, JAGC, USNR, Appellate Defense Counsel.

MAJ Charles Wm. Dorman, USMC, Appellate Government Counsel.

Before SANDERS, Senior Judge, and KERCHEVAL and MALONE, JJ.

MALONE, Judge:

At a special court-martial, appellant plead guilty as charged to two specifications of unauthorized absence and by exceptions and substitutions to a lesser period of absence charged in a third specification. He was convicted as charged of these three, as well as two additional, specifications of unauthorized absence and 16 specifications of failure to go at the prescribed time to Restricted Men's Muster, all in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886. He was acquitted of six specifications of failing to attend restriction muster and one specification each of missing movement and failing to obey technical arrest orders, violations of Articles 86, 87, and 92, UCMJ, 10 U.S.C. §§ 886, 887, 892, respectively. Appellate defense counsel assigned the following three errors:

## I

THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S MOTION TO DISMISS FOR LACK OF SPEEDY TRIAL.

## II

SPECIFIC PREJUDICE RESULTED WHEN THE APPELLANT WAS DENIED HIS RIGHTS TO SPEEDY REVIEW AND MILITARY DUE PROCESS.

## III

THE EVIDENCE IS INSUFFICIENT IN LAW AND FACT TO SUPPORT A FINDING OF GUILTY OF AN UNAUTHORIZED ABSENCE IN EXCESS OF 8 DAYS WITH RESPECT TO SPECIFICATION FOUR OF CHARGE I.

We shall discuss these assigned errors seriatim. Necessary to our decision of assignments I and II, however, are the following facts. Coincident to appellant's return to his command, USS PIEDMONT (AD 17), on 28 June 1980, then located in Mayport, Florida, after the fifth of a series of unauthorized absences, appellant was placed on restriction to the limits of the PIEDMONT to await trial. He had spent an additional four days restriction at the Naval Station, Norfolk, Virginia, while waiting to join his ship. As the PIEDMONT was scheduled to depart Mayport within the week for operations at sea and then return to Norfolk, Virginia, it was decided to utilize the legal services of the Naval Legal Service Office, Norfolk, rather than the Naval Legal Service Office Detachment, Mayport, for the conduct of appellant's court-martial. Immediately upon the PIEDMONT's return to Norfolk 15 July 1980, those services were obtained resulting in the referral of Charges I, II, and III on 21 July 1980. Coincident with the referral on 28 July 1980 of the additional charge and its 22 specifications of failure to go to restricted muster, appellant was confined to await trial.

Thereafter, on Friday, 8 August 1980, the trial defense counsel caused to be served upon the originally detailed trial counsel a demand for speedy trial. Responding to this demand, the trial counsel determined that laboratory reports requisite to the prosecution of two amphetamine possession and introduction offenses under Charge III "would not be available for some time." (R. 18). Accordingly, those two charges were withdrawn and the decision made to proceed to trial on the remaining charges in the face of the demand for speedy trial. Trial defense counsel then was consulted by the trial counsel to determine his availability for trial. Having provided the trial counsel his schedule sometime between the 8th and 14th of August, trial defense counsel requested trial counsel to "[s]et it for the first date." (R. 13).

In apparent pursuit of that objective, trial counsel on 13 August 1980 tentatively docketed the case for trial to be held on 8 September 1980. That date was proposed to the military judge by the trial counsel in a pretrial information report first submitted to the trial defense counsel for his information and comment. In the absence of trial defense counsel's objection or comment to this proposed date, the military judge approved and assigned that trial date on 14 August 1980. The originally detailed trial counsel later testified that he had proposed "the first available day when judge, defense counsel, and trial counsel were available . . . ." (R. 18).

Appellant was tried as previously scheduled on 8 September 1980 at a five hour bench trial at which eleven witnesses testified on behalf of the government and the defense. Twenty-five documentary exhibits were made a part of the record by either the Government or defense in support of their respective positions on two defense motions, the case in chief, and presentencing matters. Appellant was sentenced to confinement at hard labor for 45 days, forfeiture of $275.00 per month for three months, reduction to the lowest enlisted pay grade, and to be discharged from the naval service with a bad-conduct discharge, with the recommendation made by the military judge that the convening authority consider suspending the imposition of the discharge.

Trial defense counsel was provided a copy of the 109 page record of trial for his retention on 27 October 1980, which record then was authenticated by the military judge 18 November 1980. The Commanding Officer, USS PIEDMONT, took his action on appellant's case 2 December 1980, noting that he had considered the recommendation of the military judge when approving the sentence.

On 17 March 1981, appellant submitted a clemency petition to the supervisory authority, Commander, Naval Surface Force, U. S. Atlantic Fleet, requesting the suspension of the adjudged bad-conduct discharge. Accompanying this petition was a favorable report of appellant's job performance since his trial. No further action on the review of appellant's conviction is recorded thereafter until completion on 6 May 1981 of the Force Judge Advocate's review of the record of trial, in accordance with the requirement of Article 65(b), UCMJ, 10 U.S.C. § 865(b). While recommending the approval of the findings and sentence as adjudged and approved by the convening authority, it was additionally recommended by the staff judge advocate that appellant's punitive discharge be suspended.

Appellant, however, in a supplementary clemency petition, dated 8 May 1981, requested the supervisory authority to disregard the staff judge advocate's recommendation regarding the discharge. Instead, appellant requested the remission of forfeitures. In his *Goode* [1] response to the Force Judge Advocate's Review of the same date, trial defense counsel among other things attempted to explain appellant's change of heart regarding his discharge thusly:

> This case has taken an extraordinarily long time to bring to trial, and to review. Accordingly, the accused has been in restriction, confinement, or in a transient status awaiting review for almost a year.

The record reflects that the accused has had psychological problems, and is extremely nervous. The result is that despite an initial favorable prognosis for continued service, the delay, and attendant boredom and close restraint on those in a transient status at Nimitz Hall have taken their toll.

Trial defense counsel letter, dated 8 May 1981, at p.2.

This turn of events caused an interview of appellant to be conducted 13 May 1981 by personnel of the supervisory authority's staff in the presence of his trial defense counsel, which confirmed appellant's change of attitude toward continued service in the U. S. Navy, and prompted the opinion that appellant's adverse personal feelings rendered him a poor candidate for rehabilitation. This opinion was expressed in the supplemental memorandum dated 19 May 1981 to the original Force Judge Advocate's Review. The supervisory authority took his action approving the findings and sentence on 26 May 1981, 175 days after the action of the convening authority and 260 days following the imposition of sentence.

## I

We address first the issue whether the military judge erred in denying appellant's motion to dismiss all charges and specifications for want of a speedy trial. The benchmark decision regarding the statutory right to speedy trial in the military is, of course, *United States v. Burton*, 21 U.S.C. M.A. 112, 44 C.M.R. 166 (1971).[2] In that case, the Court of Military Appeals set down those guidelines applicable to an accused's statutory right to speedy trial at courts-martial, developing two prongs for our consideration. The first prong recognized the existence of a rebuttable presumption of an Article 10 [3] violation in

---

1. *United States v. Goode*, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975).

2. Appellant has not claimed the alleged denial of speedy trial rises to a constitutional magnitude. Indeed, it does not. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

3. 10 U.S.C. § 810 reads, in part: When a person subject to this Chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific

those cases where, in the absence of defense requests for continuance, pretrial confinement exceeded three months.[4] *Id.* at 118, 44 C.M.R. at 172. The application of the first prong, however, does not concern us here.

■ Appellant, instead relies on *Burton's* second prong which states:

Similarly, when the defense requests a speedy disposition of the charges, the Government must respond to the request and either proceed immediately or show adequate cause for any further delay. A failure to respond to a request for a prompt trial or to order such a trial *may* justify extraordinary relief.[5] (Emphasis added).

*Id.* at 118, 44 C.M.R. at 172.

Inasmuch as appellant's pretrial restraint, whether it be in the nature of confinement or restriction, amounted to less than 90 days and a demand for a speedy trial was served on the trial counsel, our disposition of this issue falls squarely within the dictates of the second prong. We therefore must subject to close scrutiny the circumstances and reasons causing the delay of appellant's trial to determine whether the Government diligently responded to the demand for early trial, thereby proceeding immediately to trial or showing adequate cause for the delay suffered subsequent to the demand. *United States v. Johnson, supra* note 5; *See also United States v. Morrow, supra* note 5. Having done so, we find that, while the Government cannot be said to have proceeded to trial immediately, the record clearly demonstrates adequate justification for the delay of 31 days involved. *See United States v. Frostell,* 13 M.J. 680 (N.M. C.M.R.1982).

Appellant complains that the Government cannot adequately justify its delay merely because it was awaiting receipt of an investigatory lab report pertaining to the drug charges under Charge III, citing *United States v. Reitz,* 22 U.S.C.M.A. 584, 48 C.M.R. 178 (1974); or because of a crowded docket where the date set for trial was the first date mutually available to all parties, citing *United States v. Marshall,* 22 U.S. C.M.A. 431, 47 C.M.R. 409 (1973); *United States v. Johnson,* 22 U.S.C.M.A. 524, 48 C.M.R. 9 (1973); *United States v. McLain,* 1 M.J. 60 (C.M.A.1975); *United States v. Wolzok,* 1 M.J. 125 (C.M.A.1975). Appellant's arguments are misplaced, however.

From the outset, it is significant that each of the cases cited by appellant in arguing the absence of Government justification for its delay are cases wherein the several accused were each confined in excess of 90 days, thereby invoking *Burton's* first prong, rather than the second. Accordingly, the Government was required in each of these cases to overcome the presumption of an Article 10 violation, a task made especially onerous by the extraordinary circumstances which must be found before that presumption may be overcome. *United States v. Marshall, supra.* The circumstances of a delayed investigatory report and the administrative delays ordinarily encountered in our judicial system obviously are not exemplary extraordinary circumstances. That is not to say, however, that such circumstances may not be seen as adequate justification for delay utilizing the second *Burton* standard after subjecting those circumstances to close scrutiny.

Regarding any delay possibly attributable to completion of a pending laboratory report, we need not determine now whether the need for such a report is adequate justification for delaying an accused's trial in the face of his demand for immediate trial.

---

wrong of which he is accused and to try him or to dismiss the charge and release him.

**4.** In *United States v. Driver,* 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974), the three month rule was refined to 90 days.

**5.** The relief afforded an appellant for such Government failure does not necessarily extend

to dismissal. *United States v. Johnson,* 1 M.J. 101 (C.M.A.1975); *United States v. Herrington,* 2 M.J. 807 (A.C.M.R.1976), *pet. denied,* 5 M.J. 1109 (C.M.A.1976); *United States v. Terry,* 2 M.J. 915 (A.C.M.R.1976), *pet. denied,* 2 M.J. 187 (C.M.A.1976); *United States v. Morrow,* 13 M.J. 554 (N.M.C.M.R.1982).

The record *sub judice* discloses trial counsel immediately took action to withdraw the drug offenses after determining the report would not be immediately forthcoming.

The one remaining issue to be discussed in our resolution of speedy trial is whether the 31 day delay after accused's demand for speedy trial was justified by the docketing situation.[6] As we have previously noted, it was. Contrary to appellant's argument that trial counsel provided neither written nor oral response to the request for speedy trial (Appellant's Brief at 5), we have seen exemplary activity upon the part of trial counsel to take this case to trial in the face of that request, providing trial defense counsel with both a written and oral response to the request.

■ Having received the speedy trial request on a Friday, trial counsel with due haste inquired of both the convening authority and the Naval Investigative Service of the lab report's availability. Learning of the laboratory's case backlog, the decision was made to withdraw those related offenses and to "go with the case as soon as possible." (R. 18). Withdrawal of these charges was apparently accomplished on Monday, 11 August 1980. The record then reveals trial counsel to have consulted defense counsel sometime before the afternoon of 13 August 1980 to determine that counsel's schedule and his estimate of the length of the trial. (R. 13). With that information in hand, trial counsel prepared the necessary paperwork to docket the case for trial (R. 13), proposing the ultimate trial date of 8 September 1980 inasmuch as it was "the first available day when judge, defense counsel, and trial counsel were available . . . ." (R. 18).

Although there is some evidence that trial counsel may have had both 12 and 13 August 1980 free to try this case (R. 18), dates which on 8 August 1980 were both open on the court's calendar (R. 15), we do not find that his failure on 8 August 1980 to docket this case for trial on either of those two dates denied appellant his constitutional or statutory right to speedy trial in light of all the other evidence of the Government's efforts to take this case to trial. Nor do we find that because this case was not tried on those four or five court days which opened up before the 8th of September due to shifting schedules and cases dropping off the docket (R. 16) that the Government was remiss in providing appellant a speedy trial.

This Court is not unmindful of the requirement necessary to the assembly of the numerous parties to a trial, including as in this instance eight Government and three defense witnesses. There exists, of course, the possibility of following the common civilian practice of requiring all parties to the many trials scheduled to assemble at the courthouse, there to wait in turn for the freeing of a judge and a courtroom. This solution is, of course, absolutely absurd in the face of the military's national defense commitment and the serious, if not deadly, impairment such a practice would have on that commitment.

Appellant has urged that the Court of Military Appeals' decision in *United States v. Johnson*, 1 M.J. 101 (C.M.A.1975), is controlling in this instance, inasmuch as there existed in that case a 28 day delay in going to trial after receipt of Johnson's speedy trial request. That case is easily distinguished on its facts, however. There, Johnson was in pretrial confinement a full 118 days before trial, the speedy trial request being made on the 89th day of that confinement. The Government attempted to justify some of that delay because of the referral of additional charges. After giving "careful consideration to the totality of the delay on the additionally preferred offenses,

---

6. Appellate defense counsel additionally argues that we should not deem trial defense counsel to have waived the speedy trial issue by his acquiescence on 13 August 1980 in trial counsel's docketing of this case for trial on 8 September 1980, citing *Wolzok, supra*, and *Reitz, supra*. Those cases are not read for the propo-sition of waiver, however, but that such acquiescence is not determinative of the question to whom delay is attributable. Indeed, they held a defense counsel's mere acquiescence in a Government rescheduling of a trial date will not be the equivalent of his request for a continuance. *Wolzok, supra* at 128.

particularly insofar as that delay related to the Government's showing of diligence both before and after the accused made his demand for a speedy trial", the senior Court concurred with the Army Court of Military Review in finding a failure upon the part of the Government to show adequate cause for the delay. *Id.* at 106.

To the contrary in the case now before this Court, adequate cause has been shown to justify the delay in appellant's trial subsequent to his request for immediate trial. Appellant, suffering denial of neither his constitutional nor his statutory right to speedy trial, was instead provided a speedy trial.

## II

■ Complaining that specific prejudice has resulted because the supervisory authority's action *sub judice* was not taken for 260 days following the conclusion of appellant's trial, appellant asserts he has been denied his right to a speedy review and military due process. Although we agree the delays attendant to the review of appellant's conviction below were unreasonable, we disagree that he has been denied any military due process or has suffered any prejudice of a nature requiring post-trial relief.

■ The applicable standard for determining whether post-trial delay requires relief, enunciated in *United States v. Timmons*, 22 U.S.C.M.A. 226, 46 C.M.R. 226 (1973), is whether prejudice to an appellant results from errors in proceedings which cannot be purged on appeal or cured remedially at a rehearing. *Id.* at 227, 46 C.M.R. at 227; *United States v. Banks*, 7 M.J. 92 (C.M.A.1979); *United States v. Gray*, 22 U.S.C.M.A. 443, 47 C.M.R. 484 (1973). The prejudice of which appellant complains however, *i.e.* his change of heart in desiring to remain in the naval service, just will not afford him relief under these standards. In the absence of such cognizable prejudice, his otherwise valid trial proceedings, subject to those findings made herein, shall not be deemed "invalid solely because of delays in the criminal process after trial." *United*

*States v. Timmons, supra* at 228, 46 C.M.R. at 228.

## III

Turning to appellant's final assignment of error, we are asked to determine whether or not the evidence received by the court regarding an alleged unauthorized absence from 6 May 1980 until 7 June 1980 was sufficient in law and fact to sustain a finding of guilty. The Government's sole item of evidence offered and admitted into evidence in support of the allegation consisted of Prosecution Exhibit 3, the service record copy of a NAVPERS 1070/606, reflecting appellant's unauthorized absence from the USS PIEDMONT (AD 17) for the alleged period.

The accused herein plead guilty, however, to a lesser period of unauthorized absence, claiming his absence to have terminated on 13 May 1980 with his surrender to authorities at the Veterans Administration Hospital, Allan Park, Michigan. The unrebutted testimony of the appellant discloses him to have gone to the hospital on 13 May 1980 for the purpose of receiving medical treatment *and* terminating his absence. While at the hospital, appellant was either interviewed or treated consecutively by a chaplain, a doctor, a social worker, and a psychiatrist, apparently none of whom were military personnel but whom appellant, at least initially, believed to be in the military and whom he unequivocally informed of his unauthorized absentee status. He also believed the hospital to be a military establishment. Asking whether they would call his command for him after first informing them that he was an absentee from a ship which was getting underway soon, appellant was told by at least two persons that they were going to call the ship for him. At the end of his treatment, however, appellant received some medicine to calm his nerves and was told he was free to go, to return again on 30 June 1980 for an appointment. He did not keep that appointment.

Of greatest consequence to our decision, however, is the stipulated testimony of Mr.

Boyzell Elliard, Assistant Chief of Medical Administration for the hospital. The essence of his testimony, which the Government does not contest, is that his hospital regularly has occasion to provide medical services to active duty military personnel who are in an unauthorized absentee status. On those occasions, it is not only hospital policy and routine, but hospital *responsibility*, to retain and return these absentees to proper military authorities. The hospital responsibility extends to acting as an agent for the military, "contact[ing] nearby military authorities for directions on what to do . . . . passing on direction to the individuals, or holding them for pickup." Defense Exhibit A.

Appellate counsel have ably briefed this issue which is apparently one of first impression on these particular facts. No cases, at least, have been cited or found which may be said to be completely dispositive of this issue. A synopsis of the applicable case law therefore is appropriate in analysis of the factors pertinent to our decision.

 The termination of an unauthorized absence can be accomplished by the proper exercise of military control over the absentee when the absentee's status is disclosed to military authorities so that they either have full knowledge of the status or, by the use of reasonable diligence, they could obtain knowledge of the true status. *United States v. Raymo*, 1 M.J. 31 (C.M.A. 1975); *United States v. Jackson*, 1 U.S.C. M.A. 190, 2 C.M.R. 96 (1952); *United States v. Rayle*, 6 M.J. 836 (N.C.M.R.1979). A voluntary termination initiated by an absentee may be made effective by the absentee presenting himself to military authorities with full intention of returning to military duty. He must present himself personally, however. *United States v. Acemoglu*, 21 U.S.C.M.A. 561, 45 C.M.R. 335 (1972). He need not report to what one may consider to be the stereotypical military installation; a naval regional medical center, a recruiting office, and a selective service office have been deemed sufficient for the purpose. *United States v. Rayle,*

*supra; United States v. Kitchen*, 5 U.S.C. M.A. 541, 18 C.M.R. 165 (1955); *United States v. Raymo, supra*, respectively. However, when military authorities refuse to receive him or exercise control over him, it shall be a manifest injustice not to terminate an unauthorized absence where the accused has done everything in his power to surrender. *United States v. Self*, 35 C.M.R. 557 (A.B.R.1965); *see also United States v. Bews*, No. 81 1729 (NMCMR 17 November 1981).

 The absentee can also terminate his absence by presenting himself to civilian authorities, *United States v. Ward*, 48 C.M.R. 554 (A.C.M.R.1974); by disclosing his absentee status to civilian authorities after his apprehension on civilian charges, *United States v. Lanphear*, 23 U.S.C.M.A. 338, 49 C.M.R. 742 (1975); *but cf. United States v. Grover*, 10 U.S.C.M.A. 91, 27 C.M.R. 165 (1958); or, when he is apprehended by civilian authorities on military charges; *United States v. Garner*, 7 U.S.C.M.A. 578, 23 C.M.R. 42 (1957). Surrender to, apprehension by, or exercise of control over military personnel by civilian officials acting for and on behalf of the armed forces will effectively terminate an unauthorized absence. *Id.* at 582, 23 C.M.R. at 46. Such control thereby constitutes military control, albeit indirect military control. *Reid v. Covert*, 351 U.S. 487, 76 S.Ct. 880, 100 L.Ed. 1352 (1956), *rehearing granted on another ground* 352 U.S. 813, 77 S.Ct. 123, 1 L.Ed.2d 92; *United States v. Garner, supra*.

In the absence of evidence that a Veterans Administration Hospital exercised such control over a military absentee pursuant to military orders, acting for and on behalf of the armed forces, the Army Court of Military Review refused to hold an accused's absence to have been terminated by hospital officials. *United States v. Hart.* 47 C.M.R. 686 (A.C.M.R.1973). Appellate Government counsel now would have this Court refuse to hold appellant's absence to have been terminated on the earlier date in issue, relying on *Hart, supra.* We find, however, in the instant case all those ele-

ments necessary to evince a termination of appellant's absence by the hospital officials.

The record reveals to our satisfaction that: (1) FA Zammit presented himself to the civilian officials of the hospital; (2) full knowledge of his unauthorized absence status was disclosed to these officials by the accused; (3) the surrender was voluntarily initiated by FA Zammit with the intent to return to duty; (4) control over FA Zammit was exercised by these civilian officials; and, (5) this control was exercised by officials with acknowledged responsibilities to act for and on behalf of the armed forces in terminating the unauthorized absences of active duty military personel treated at their facility. Under these circumstances, we deem appellant's absence to have been terminated and to hold otherwise would be a manifest injustice. *Compare United States v. Self, supra,* with *United States v. Ward, supra,* and *United States v. Hart, supra.*

Finally, with regard to the additional charge and its 16 specifications of failure to go to restricted muster for which appellant was found guilty in violation of Article 86, UCMJ, we note that the only evidence offered by the Government of appellant's knowledge that he was required to be present at these musters consisted of Prosecution Exhibit 4(a), the restriction orders signed by Lieutenant J. C. Brobjorg addressed to appellant advising him of his restricted status and the times and place of muster. Providing foundation for the admission of Prosecution Exhibit 4(a), Lieutenant Brobjorg testified he had signed the orders at the direction of the commanding officer. He offered no testimony as to how or who may have served these orders on appellant or as to the authenticity of appellant's reputed signature in the receiving endorsement to the orders.

In fact, when trial counsel offered the document into evidence, trial defense counsel had no objection to that portion of the document evincing the issuance of the orders. He did object, however, to the court's admission into evidence of that portion of the document evincing appellant's receipt of the orders. The military judge then admitted the document into evidence conditionally, excluding from his consideration appellant's receiving endorsement until such time as it was properly admitted into evidence after trial counsel had provided the necessary foundation through a promised, subsequent witness. Whether this promised witness was ever produced is unknown, although three Government witnesses testified thereafter. It is known, at least, that none of these witnesses provided testimony regarding how appellant may have been informed of the existence of the restriction orders and the duties thereby imposed on him.

Accordingly, no evidence was received regarding appellant's knowledge or reasonable cause to know of his duty to muster at the alleged times and place. Knowledge of the duty or reasonable cause to know is a necessary element of the alleged offense. Paragraph 165, *Manual for Courts-Martial, 1969 (Rev).* Appellant's conviction is thereby tainted by lack of proof of this element, requiring the findings of guilty of the Additional Charge and its specifications be set aside. A rehearing may not be ordered. Article 66(d), UCMJ. The additional charge and its 16 remaining specifications therefore are set aside and are ordered dismissed.

Two errors in the special court-martial promulgation order require corrective action. Specification 8 of the Additional Charge incorrectly avers the time of commission of the offense to be 0630. The correct time alleged is 1630. Due to the nature of this offense, such an error is not insubstantial. Additionally, the plea to specification 4, Charge I excepted the figure and word "7 June," not merely the figure "7". The supervisory authority shall issue a corrective supplemental order.

Accordingly, only so much of the findings of guilty of Charge I, specifications 1, 2, 3, and 5 and as finds the appellant guilty of an unauthorized absence in specification 4 from 6 May 1980 to 13 May 1980 are affirmed. We shall reassess the sen-

tence. In so doing, only so much of the sentence as provides for a bad-conduct discharge, confinement at hard labor for 45 days, forfeiture of $275.00 pay per month for two months, and reduction to the lowest enlisted pay grade, E–1, is approved.

Senior Judge SANDERS and Judge KERCHEVAL concur.

UNITED STATES

v.

Willie Edward MALONE, 412 17 1378, Seaman (E–3), U. S. Navy.

NMCM 82 1505.

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 15 Oct. 1981.

Decided 6 July 1982.