**UNITED STATES, Appellee,**

v.

**Elvin Lee BEACH, Private First Class, U. S. Marine Corps, Appellant.**

**No. 28,831.**

U. S. Court of Military Appeals.

July 18, 1975.

Major D. A. Higley, USMC, argued the cause for Appellant, Accused. With him on the brief were *Captain T. O. Tottenham,* USMCR, and *Lieutenant Walter A. Smith, Jr.,* JAGC, USNR.

*Lieutenant Mark D. Wigder,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel P. N. Kress,* USMC, and *Lieutenant Commander Harvey E. Little,* JAGC, USN.

## OPINION OF THE COURT

FLETCHER, Chief Judge:

In this case, the accused complains of the 143-day delay in bringing him to trial,[1] relying on our decision in *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). A statement of the facts is unnecessary. Our examination of the record, the arguments in the briefs, and the contentions made on oral argument and reargument cause us to conclude that the Government has not established the existence of "really extraordinary circumstances beyond such normal problems as . . . [are] caused by difficulties usually encountered in the processing of charges for trial." *United States v. Marshall,* 22 U.S.C.M.A. 431, 435, 47 C.M.R. 409, 413 (1973). As no unusual factors[2] were presented in this case, the Court of Military Review erred in affirming the findings and sentence.

The decision of the United States Navy Court of Military Review is reversed. The Charge and its specification are ordered dismissed.

Senior Judge FERGUSON concurs.

1. The actual delay amounted to 159 days, but appellate defense counsel concede the Government did not bear sole responsibility for the delay exceeding 143 days.

2. While not necessary to the disposition of this case, we are concerned with the staff judge advocate's destruction of the investigating offi-

COOK, Judge (dissenting):

As I view this case, it presents important questions as to the relationship between an Article 39(a), 10 U.S.C. § 839(a), hearing requested by defense counsel and the Government's obligation to bring the case to trial in due time. *See United States v. Driver,* 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974). The principles of law applicable to that relationship and their effect on the facts, as I perceive those facts, impel me to the conclusion that the Government met its obligation to proceed with dispatch.

On October 27, 1972, at the Marine Corps Air Station, Cherry Point, North Carolina, the accused shot and wounded Corporal Johnson. Within minutes of the first shot, he was apprehended on the scene. After an interview with Captain Taddune, who had been appointed to represent him, and an examination by a flight surgeon to determine if he could be confined without risk of suicide, the accused was confined in the station correctional facility. On April 4, 1973, a general court-martial assembled to try the merits of a charge of attempted murder that had been lodged against the accused 3 days after the shooting.

Under Article 10, Uniform Code of Military Justice, 10 U.S.C. § 810, an accused placed in confinement prior to trial is entitled to release and dismissal of the charge for which he is confined, if the Government does not take "immediate steps . . . to try him." When pretrial confinement exceeds 90 days, a rebuttable presumption arises that the Government has violated Article 10 to the prejudice of the accused. Of the 159 days between confinement and the beginning of trial, appellate defense counsel concede that the defense shares responsibility for the time from March 20. However, they contend the Government is solely accountable for the remaining 143 days and that it failed to meet the heavy

cer's request for a sanity examination which constituted a part of the official proceedings in this case. *See* Manual for Courts-Martial, United States, 1969 (Rev.), para. 121; ABA Code of Professional Responsibility, EC 1-5, DR 1-102(A)(5).

burden of demonstrating diligence in bringing the accused to trial. In opposition, the Government insists it is accountable only for the 80-day period from accused's confinement on October 27, 1972, to January 15, 1973, when an Article 39(a) hearing was held by the military judge of the court-martial to which the charge had been referred for trial. In its view, therefore, the presumption of prejudice never arose, and the proceedings antecedent to trial were timely.

Although conceding that some sessions under Article 39(a) may not qualify as a bringing of an accused to trial, Government counsel nevertheless maintain that under paragraphs 53$d$(1) and 57($g$)(1) and (2) of the Manual for Courts-Martial, United States, 1969 (Rev.),[1] the Article 39(a) hearing on January 15 marked the end of the period of accountability by the Government because, at that time, the Government was ready, willing, and able to proceed with a trial on the merits. In apparent acceptance of that contention, the Court of Military Review said: "We find that trial in this case commenced with the Article 39(a) session on 15 January 1973 and that pretrial confinement ended at that time." *United States v. Beach,* 49 C.M.R. 124, 127 (N.C.M. R.1974).[2]

Sometime after publication of the Court of Military Review's opinion, this Court decided *United States v. Marell,* 23 U.S.C. M.A. 240, 49 C.M.R. 373 (1974). There the Court considered for the first time the relationship between an Article 39(a) session and the Government's obligation to proceed diligently to bring the accused to trial. In *Marell,* as here, the Government contended that, whatever the reason for its convening and whatever the substance of the matters considered, an Article 39(a) session constitutes a bringing of the accused to trial and marks the end of the period for which the Government must account under Article 10. As Marell had pleaded guilty, and findings of guilty were entered on his plea at the Article 39(a) session, the Court concluded that the session in his case was tantamount to trial on the merits. In this case, however, no plea of guilty was entered and no findings of guilty were recorded at the Article 39(a) session. Application of *Marell's* rationale requires the conclusion that this Article 39(a) session was not the functional equivalent of a trial, and did not, therefore, end the period of accountability.

To say that an Article 39(a) session dealing with matters other than the accused's guilt does not constitute bringing an accused to trial does not necessarily mean that the Government is chargeable with the time required for the hearing. The Speedy

1. Paragraph 53$d$(1) of the Manual reads, in pertinent part, as follows:

   At any time after the service of charges which have been referred for trial to a court-martial composed of a military judge and members, the military judge may, subject to Article 35, call the court into session without the presence of the members for the purpose of:
   
   (a) hearing and determining motions raising defenses or objections which are capable of determination without trial of the issues raised by a plea of not guilty;
   
   . . . . .
   
   These proceedings are a part of the trial and shall be conducted in the presence of the accused, the defense counsel, and the trial counsel. See 57$g$(2) and 73($d$).
   
   In material part, paragraphs 57$g$(1) and (2) of the Manual provide:
   
   The ruling or decision on an interlocutory question should be preceded by any necessary inquiry into the pertinent facts and law.
   
   . . . . . . .

When sitting with members . . . [the inquiry should be] out of the hearing of the members of the court. Also, if it appears . . . [the inquiry will concern] matters prejudicial to the . . . accused or the Government . . . members of the court [will] be excluded . . . .. [T]hese proceedings . . . will be fully recorded, transcribed and incorporated in the record of trial.

2. Appellate defense counsel deem inconceivable the court's statement that the accused's pretrial confinement ended. In fact, the evidence is that he was not released. However, as I read the statement of the finding, in the context of the court's general discussion of the issue, I believe the court did not literally mean that pretrial confinement was terminated; rather, the court intended to convey the idea that the Article 39(a) session of January 15 marked the last day of the period of time for which the Government had to account.

Trial Act of 1974 enacted by Congress to assure a speedy trial in the Federal civilian courts expressly provides that "delay resulting from hearings on pretrial motions" are "excluded in computing the time within which . . . the trial . . . must commence." 18 U.S.C. § 3161(h)(1)(E). While the Act does not apply to the military, the provision reflects recognition of the fact that the usual pretrial hearing may be an occasion of justifiable delay. *See United States v. Reitz,* 22 U.S.C.M.A. 584, 48 C.M.R. 178 (1974).

In many instances, a pretrial hearing will deal with a matter whose resolution is sought by, and is for the benefit of, the accused, as it is here. Delay caused by such a hearing is excluded from the period for which the Government must account. *United States v. Marshall,* 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973). The period of exclusion is for the reasonable time required to schedule the hearing, to conduct it, and to execute orders of the court that result from the hearing. To illustrate, let us suppose that after a 77-day delay, an Article 39(a) hearing is held at which the judge decides, against the accused, a motion to dismiss for lack of jurisdiction; assume further, that it required 3 days to process and dispose of the motion and that the court-martial convened 15 days later for trial. In this example, the total period required to bring the accused to trial would be 95 days. Of that period, 3 days would be excludable as attributable to the pretrial hearing on the jurisdictional issue, leaving 92 days for the Government to justify. A delay of that length makes the presumption of prejudice operative and imposes upon the Government the heavy burden of demonstrating diligence in the prosecution. *United States v. Marshall, supra* at 434, 47 C.M.R. at 412.

In this case, the Article 39(a) hearing on January 15 dealt with four defense applications for relief. The first was a motion to dismiss for lack of jurisdiction over the accused on the ground his enlistment was void because he had been convicted of a felony in a civilian court and also lacked the mental capacity to enter into the enlistment contract. A second motion was to dismiss the charges for denial of a speedy trial; the motion was based more upon alleged oppression of, and prejudice to, the accused by the conditions of his confinement than upon the lapse of time. This motion was denied. A third motion was for appropriate relief by way of "completion of the paragraph 121,[3] Manual for Courts-Martial (1969, Revised) inquiry into the mental condition of the accused which was initiated at the formal pretrial investigation conducted on 1 December 1972"; and the fourth motion was for the subpoena of witnesses to support the defense contention as to accused's mental responsibility at the times material to the case. The judge granted the motion for a paragraph 121 inquiry but "delay[ed]" ruling on the jurisdictional and witness motions. In regard to the jurisdictional issue, he directed trial counsel "to obtain such evidence that may be available . . . [in regard to] accused's conviction for a felony."[4] As to the related motion for witnesses, he indicated he would be able to consider it "more intelligently" after completion of the medical board inquiry under paragraph 121. The hearing was then adjourned to await procurement of the "information . . . ordered to be obtained."

---

**3.** In pertinent part, paragraph 121, M.C.M., provides as follows:

If it appears to any commanding officer who considers the disposition of charges as indicated in 32, 33, and 35 or to any investigating officer (34), trial counsel, or defense counsel that there is reason to believe that the accused is insane (120*d*) or was insane at the time of the alleged offense (120*b*), that fact and the basis of the observation should be reported through appropriate channels in order that an inquiry into the mental condition of the accused may be conducted before trial. When the report indicates a reasonable basis for the belief, the matter will be referred to a board of one or more medical officers for their observation and report as to the sanity of the accused.

**4.** In my opinion, the trial judge erred in imposing this burden on the Government. On the basis of accused's enlistment record, there was no defect in his enlistment; consequently, the accused had, at least, the burden of presenting some evidence to show that the enlistment was fatally defective.

The Government maintains that the entire period between the first Article 39(a) session and the second which was held on March 19, 1973, must be charged to the defense because it requested the sanity inquiry, which required postponement of trial of the merits. As the Court of Military Review's opinion emphasizes that the delay "was defense originated," [5] apparently, it too, believed the accused was chargeable with this period. The defense, however, blames the Government for creating a situation that forced it to move for "continuation" of the sanity inquiry. Defense counsel maintain that during the Article 32 investigation, which was held in early December 1972, the Government led the defense to believe it would initiate the 121 inquiry; that it did request such inquiry, but then abandoned the request, without notice to the defense until January 8. On that day, trial counsel served defense counsel with a pretrial information sheet which indicated the charges had been referred to trial on January 2, and a trial date had been set. The evidence involved in the respective arguments is extensive, but there are troublesome lacunae. Also, the import of different circumstances has been viewed inconsistently by both counsel at different times in the Article 39(a) sessions. In my recital of the evidence, I have drawn together undisputed facts, and what I believe are reasonable inferences, consistent with the findings of fact implicit in the rulings of the trial judge and the determination of the Court of Military Review.

On October 31, 1972, the day the accused was formally charged, the Commanding Officer, Wing Supply Group-27, Cherry Point, North Carolina, the officer exercising summary court-martial jurisdiction over the accused, ordered an Article 32 investigation.[6] On December 1 and 4, 1972, the investigating officer took testimony from many witnesses. At the hearings, the Government was represented by counsel, Captain Kleintop. The testimony indicated that the accused may not have been mentally responsible when he shot Corporal Johnson.

Four days after the Article 32 hearings, Captain Kleintop submitted a request to the Commander of Group-27 for a 121 inquiry into the accused's sanity. He referred to the evidence adduced at the hearings, and represented that it had "caused the Article 32 Investigating Officer to direct" him to initiate "steps" to have the inquiry conducted. Captain Kleintop recommended that the medical board not be convened until the investigating officer's report was completed so that the transcript of the hearings could be considered "along with . . . the man himself."

Following receipt of Captain Kleintop's request, the group commander acted favorably on it and prepared his own request for the inquiry. Both requests were turned over to the wing staff judge advocate, who later destroyed them.

During argument on a motion to reconsider the speedy trial issue, defense counsel contended that destruction of the requests resulted from the sudden realization that a sanity hearing would make the case "run over" 90 days from accused's pretrial confinement to trial, and therefore, the Government "better get . . . [the] case right on . . . prior to the 90 days" or the charge would be dismissed. He maintained further that the Government's failure to proceed in December with the paragraph 121 inquiry, which now was conceded by Government counsel to have been "needed," made the Government responsible for the time required for accomplishment of accused's psychiatric evaluation by the sanity board and for the delay occasioned by the defense request for subpoena of witnesses. Trial counsel opposed the defense argument on two grounds. First, he argued that the speedy trial issue had properly been resolved at the January 15 hearing. At that session, he had argued that "the action taken by the Wing Staff Judge Advocate was perfectly logical" in that the group commander could legiti-

---

**5.** *United States v. Beach,* 49 C.M.R. 124, 127 (N.C.M.R.1974).

**6.** *See* M.C.M., paragraph 33e.

mately seek the advice of the staff judge advocate; the unexpressed implication was that the group commander had authorized destruction of the letters.[7] His second contention was that the delay between the two Article 39(a) sessions was due to other engagements of counsel and the heavy docket of the court in the month of February and "in the first two to three weeks in March."

The view I take of the case makes it unnecessary to decide whether the Government acted responsibly in regard to the paragraph 121 inquiry. Assuming, without deciding, that the Government grossly erred by not proceeding with the inquiry in December 1972, the evidence does not support the defense contention that the delay between the two Article 39(a) sessions "would've never had to elapse had the 121 board been conducted way back when the Government first said they were going to do it." Rather, it demonstrates that even had the Government proceeded as defense counsel say it should have, enough of the delay would be excludable to make the period of the Government's accountability less than 90 days.

I consider first the inquiry into the accused's sanity. Whether that inquiry had been initiated in December, as defense counsel contend it should have been, or in January, as it was, the time taken for it is

excludable from the period of the Government's accountability. I noted earlier that the Speedy Trial Act of 1974 excludes time taken for certain pretrial proceedings. One of the excludable periods is that "resulting from an examination of the defendant, and hearing on, his mental competency." 18 U.S.C. § 3161(h)(1)(A). A delay for that reason is "beyond the control" of the prosecution, or other agency of the Government involved in the criminal process. *United States v. Marshall, supra* at 434, 47 C.M.R. at 412. The question then is how long is the period in this case. The answer has an importance that transcends determination of an excludable period because of its relation to the accused's motion for subpoena of witnesses and the reasons defense counsel gave for the lateness of the motion.

My reading of the medical board's reports of its proceedings and the pertinent evidence convinces me that had the sanity examination been conducted in December, it would have required the same amount of time to complete as was required for it in the January-February period.[8]

On February 2, the medical board filed a report dealing with the accused's current sanity and his mental responsibility at the time of the offense. On February 8, it submitted an addendum, certifying that in

---

7. In this Court, the Government moved to file an affidavit by the staff judge advocate in which he averred that the group commander had "directed" him "to withdraw the request for a 121 board." The affidavit also represented that the commander had "changed his mind" and requested that the document be returned to him or torn up; the staff judge advocate "elected to do the latter." It is not clear why the Government was satisfied to submit only hearsay information to refute what it describes as the "sinister motives" conjured up by the defense. The motion to incorporate the affidavit into the record was denied. *See United States v. Roberts,* 7 U.S.C.M.A. 322, 325, 22 C.M.R. 112, 115 (1956). While the information contained in the affidavit is, therefore, not part of the evidence, I am constrained to express my shock and sorrow at the fact that an officer as knowledgable as the wing staff judge advocate would destroy material constituting part of the official proceedings. Assuming, without deciding, that the commander's own request for a medical board inquiry had not been "published," so that it could

be recalled without legal consequence, cf. *United States v. Griffin,* 13 U.S.C.M.A. 213, 32 C.M.R. 213 (1962), neither he, nor anyone else, could destroy Captain Kleintop's request, which was then part of the official proceedings, and which could not be physically expunged from the record. *United States v. Dean,* 7 U.S.C.M.A. 721, 725, 23 C.M.R. 185, 189 (1957).

8. I recognize that in December no issue had been raised as to accused's mental capacity to understand the nature and consequence of enlistment in the Marine Corps in 1971, and, therefore, a sanity inquiry at that time would have been limited to his mental competency to stand trial and his mental responsibility as to the commission of the offense charged. The January-February inquiry considered accused's sanity at all three times. As I point out later in the text, the evidence provides a valid basis for separating out the period the medical board took to evaluate the accused's mental condition at the time of enlistment.

its opinion the accused was sane when he enlisted in 1971. No evidence exactly fixes the time when the initial report was received by the court-martial authority, but inferences from some of the evidence indicate that the report was received, or its substance was known, on February 8. As that date is most favorable to the accused's position, I accept it as the end of the paragraph 121 inquiry. For the same reason, I accept as the starting date not January 15, the day the paragraph 121 inquiry was ordered by the trial judge, but January 22, the day the convening authority initiated the request. Thus, the excludable period for the medical inquiry is 18 days. Retroceding that period to the group commander's December order for a paragraph 121 inquiry demonstrates, in my opinion, the absence of any merit in the defense contention that the burden of the delay resulting from the defense request for witnesses should be borne by the Government, not the defense.

When the defense moved for subpoena of witnesses at the Article 39(a) session on January 15, defense counsel represented that he had not moved earlier because he was waiting for the 121 inquiry to be completed; he maintained that he believed deferment of the request would conserve the time of both the Government and the potential defense witnesses. Conceding the belief does not make the Government responsible for the failure of the defense to prepare its own case. The fact is had the paragraph 121 inquiry been initiated in December, the defense posture as to its witnesses would have not been any different from what it was at the time of the Article 39(a) session in January.

Captain Kleintop had recommended that the testimony of the witnesses at the Article 32 investigation be before the medical board. The defense does not question the good sense of this recommendation. Consequently, the earliest the group commander could have initiated the paragraph 121 inquiry was on December 21, the day he received the investigation report. As I have

concluded that the inquiry would have taken 18 days to complete had it been started when it should have been, as contended by the defense, the examination would have been completed on January 7, 1973. Since January 7 was a Sunday and defense counsel conceded he was informed on January 8 of the Government's readiness to go to trial, the defense was in precisely the same position it would have been in had the sanity inquiry been undertaken in December.

Previously, I observed that delay resulting from a pretrial motion is excluded from the period for which the Government must account. If the sanity inquiry is considered as having occurred before the January 15 hearing, then two periods of excludable time are present: (1) that for the mental examination, which covers 18 days from December 21 to January 7, and (2) that for the disposition of the defense motion to subpoena witnesses. On the other hand, if the events are treated as they actually occurred, which is what the Court of Military Review did, then the time for the paragraph 121 inquiry is merely a portion of the longer period involved in the disposition of "defense originated" motions. True, the trial judge directed Government counsel to obtain information as to accused's competency to enlist and to arrange for the 121 inquiry,[9] but neither that order nor the judge's deferment of the defense motion changed the nature of the proceeding or the substance of the matters that were at issue. The proceeding still remained a pretrial proceeding and the motions were still defense motions. Consequently, when the hearing was adjourned for "an indefinite period," the Government was not solely responsible for redocketing the motions and bringing them to decision. In this situation, the defense position was materially different from its position while waiting for the case to be brought to trial. As pointed out in *United States v. McClain,* 23 U.S.C. M.A. 453, 50 C.M.R. 472, 1 M.J. 60 (1975), "[a]n accused and his counsel need not do anything to speed his case to trial." The Government must proceed with dis-

---

9. *See* note 4 *supra.*

patch, and its responsibility is especially heavy when the accused is in pretrial confinement. *United States v. Johnson,* 23 U.S.C.M.A. 397, 50 C.M.R. 279, 1 M.J. 101 (1975); *United States v. Ward,* 23 U.S.C.M.A. 387, 50 C.M.R. 164, 1 M.J. 18 (1975). Delay occasioned by necessity to deal with pretrial motions is, however, not part of the Government's time of accountability. This is not to say that the Government will escape accountability for dilatory tactics on its part resulting in a longer delay than would otherwise occur. Thus, if the defense is ready and able to proceed with disposition of its motion, and gives notice thereof to the Government and the court, the Government cannot defer or postpone the proceedings without incurring responsibility for the added delay. No such dilatory tactics appear in the record. According to trial counsel, he did all he could to resume the hearing. Not so the defense counsel. Although the motions were theirs, defense counsel proceeded as though they had no obligation in regard to resumption of the hearing. Among other things, some of their evidence relating to accused's alleged incompetency to enlist was not obtained until after February 26 and they did not settle their position on the witnesses they wanted until the "last few days" before resumption of the Article 39(a) session on March 19.

From what I have said, it is apparent that all of the time from January 15 is excludable from the Government's period of accountability as time required for disposition of the defense motions on which decision had been deferred. That period amounted to 64 days, which deducted from the 143 days that elapsed between accused's confinement and March 19 leaves a period of accountability of 79 days. A delay of that duration does not give rise to a presumption of prejudicial delay.[10] Whether the 79-day period of delay was factually prejudicial to the accused was considered by the trial judge on the original defense motion to dismiss for lack of speedy trial and was decided against the accused. In my opinion, the evidence supports that ruling. I conclude, therefore, that the accused was not denied his right to a speedy trial, and I would affirm the decision of the Court of Military Review.

---

10. *United States v. Montague,* 22 U.S.C.M.A. 495, 47 C.M.R. 796 (1973).