**UNITED STATES**

v.

**Private (E–1) Jerome Jay HILL, 135–46–3437, US Army, Company D, 18th Battalion, 5th Training Brigade (BCT), United States Army Armor Center and Fort Knox, Fort Knox, Kentucky 40121.**

**CM 432841.**

U. S. Army Court of Military Review.

Sentence Adjudged 21 Oct. 1974.

Decided 30 July 1976.

Appellate Counsel for the Accused: CPT Ralph E. Sharpe, JAGC; CPT Ronald Lewis Gallant, JAGC; CPT Theodore H. Watts, JAGC; MAJ Richard J. Goddard, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Richard A. Gallivan, JAGC; CPT Gary F. Thorne, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

OPINION OF THE COURT

CLAUSE, Senior Judge:

Contrary to his pleas, appellant was convicted of two specifications of robbery and one specification of aggravated assault in violation of Articles 122 and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 928 and 922, respectively.

There are several errors assigned by appellant which merit discussion.

### Speedy Trial

In his first assigned error, appellant alleges, as he did at trial, a violation of the rule of *United States v. Burton,* 21 U.S.C. M.A. 112, 44 C.M.R. 166 (1971) in that he was not brought to trial until after 177 days of pretrial confinement had elapsed. The facts, as delineated in a Stipulated Chronology, are not in dispute.

On 16 July 1974 the initial 39(a) session was held with trial before a full court scheduled to commence the following day. At the time, the accused had been in pretrial confinement for 86 days. During that 39(a) session, the accused was arraigned, entered his pleas and made no motions. The defense then requested a delay to "obtain defense materials, defense evidence and witnesses." The trial counsel opposed the request on the grounds that he was, in the words of the military judge "ready, willing and able to proceed with the trial." It was unrebutted that the trial counsel had his witnesses prepared to testify the following day and it appeared that he opposed the delay in good faith. The military judge granted the defense request for a continuance until 21 August 1974.

At the second 39(a) session which commenced on 21 August 1974, the 122nd day of confinement, several issues were litigated and the defense raised the issue of the accused's mental responsibility for the first time. The prosecution requested and received a continuance for the purpose of having the accused evaluated by a sanity board as provided for in paragraph 121 of the Manual for Courts-Martial, United States, 1969 (Revised edition). On 23 September 1974, at a third Article 39(a) session, the military judge ordered a new sanity board, after determining that the first board had failed to comply with the requirements of the Manual. On 15 October 1974, the 177th day of confinement, a fourth Article 39(a) session was held. The military judge ruled on several motions including the denial of a defense motion to dismiss for lack of a speedy trial. Trial with members commenced.

Resolution of the speedy trial issue may be approached from at least two positions. The first approach, the one apparently utilized by the military judge in denying the speedy trial motion at trial, is that the trial commenced at the first or at least the second Article 39(a) hearing. In either instance the Government's accountability would be only 86 days, for clearly the delay between the first and second session was at the request of the defense.

Clearly not all Article 39(a) sessions will constitute bringing the accused to trial within the meaning of the *Burton* rule. *United States v. Towery,* 2 M.J. 468 (A.C.M.R. 17 December 1975), *petition granted* on other grounds, decision of U.S. Army Court of Military Review vacated and remanded by Order of the United States Court of Military Appeals, Docket No. 31928, dated 28 April 1976. Each case must depend on its own facts and circumstances. *Cf. United States v. Marell,* 23 U.S.C.M.A. 240, 49 C.M.R. 373 (1974). The Government had complied fully with the mandates of Article 10, UCMJ, that it take immediate steps to try the accused or dismiss the charges and release him. The prosecution vigorously objected to any further delay of the trial after arraignment on the 86th day. We find no reason to hold the Government negligent in not anticipating that sanity would be in issue and the defense gave no indication of this possibility in obtaining its delay after arraignment. Therefore, we hold that the *Burton* period ended on the 86th day of pretrial confinement when appellant was brought to trial. *Towery, supra.* As we noted in *Towery,* the focus of the diligence required by *Burton* is on the "processing of the charges for trial," *citing United States v. Marshall,* 22 U.S.C.M.A. 431, 435, 47 C.M.R. 409, 413 (1973).

Although he had been brought to trial, appellant demurred and requested a delay. This and subsequent periods before the general issue was resolved are subject to judicial scrutiny, but they are not viewed from

the *Burton* perspective. The difference lies in the fact that an accused has come under judicial scrutiny and the dangers protected against by Article 10 have been thereby dissipated. Thus, the issue becomes one of measuring the reasonableness of judicial action, not that of police and prosecutors.

It is apparent however that at least part of appellant's requested delay was used by the defense to obtain psychiatric testimony, which issue they raised at the second hearing (122nd day). After the issue was raised at the second hearing, the military judge had the responsibility not to proceed until the matter of the accused's sanity was adequately explored and resolved. That he fully assumed this responsibility is clear from the record. His determination at the third hearing (155th day) not to accept the results of the first sanity board and to order additional inquiry was "beyond the control of the prosecution." In this regard the judge must be considered to have acted in behalf of the accused for under his interpretation of the Manual and case law the accused had not established the defense of insanity; however, in view of the failure of the sanity board to properly consider the legal aspects of the question, the possibility of an insanity defense was not yet precluded. The military judge did not abuse his discretion in refusing to rule on this issue until it had been fully and properly explored. The differences in approach to the sanity issue between the medical and legal professions are perhaps regrettable, but certainly understandable, and some degree of misunderstanding must be tolerated by both professions in the interest of justice.

The characterization of the entire proceedings after the 86th day as a trial under *Burton* is further buttressed by the conduct of the parties during that period. For example, we note that at the second Article 39(a) session several defense motions were litigated. Much of the Government and defense cases-in-chief was elicited during this hearing and consumed much of the record of trial.

As stated, we are satisfied that particular facts and circumstances of the instant case justify a determination that for the purpose of the *Burton* rule the trial had commenced on the 86th day and thus the *Burton* 90-day rule did not apply. The military judge was correct in denying the defense motion for dismissal on *Burton* grounds.[1] Likewise, he did not abuse his discretion in granting a delay for the purpose of ordering a sanity board or in determining to order a second sanity inquiry after finding the results of the first to be inadequate under legal standards.

The second possible approach to the speedy trial issue, and that urged by appellate Government counsel, is that the time taken for resolution of the sanity issue should be excluded from the period of Government accountability under *Burton*. Support for this position is found in the dissenting opinion of Judge Cook in *United States v. Beach,* 23 U.S.C.M.A. 480, 50 C.M.R. 560, 1 M.J. 118 (1975). While the majority in *Beach* were apparently unwilling to adopt the rationale under the circumstances of that case, we find the different

---

1. Appellant's substantial reliance upon *United States v. Beach,* 23 U.S.C.M.A. 480, 50 C.M.R. 560, 1 M.J. 118 (1975) is misplaced. The majority in *Beach* held only that Government had not established the existence of "really extraordinary circumstances beyond such normal problems as . . . [are] caused by difficulties usually encountered in the processing of charges for trial," and finding "no unusual factors" in the case they applied the *Burton* rule. Even relying on the dissenting opinion of Judge Cook and on the opinion of the Court of Review for the facts of that case, we find this case distinguishable. The need for a sanity inquiry was apparent in that case. In addition to the accused's suicide attempt while in pretrial confinement, the investigating officer officially requested a sanity examination. The Government had the responsibility to initiate an inquiry under paragraph 121, MCM 1969 (Rev). The Court's opinion in *Beach* did not discuss the possibility of a trial commencing for *Burton* purposes at an Article 39(a) session. Recognizing that the possible defense of sanity is often a matter clearly within the exclusive knowledge of the defense, some method of permitting fair and orderly resolution of the issue when raised by the defense for the first time at the last minute must be permitted. Considering this an "extraordinary" or "unusual" circumstance is one possibility which could also be applicable in the instant case.

circumstances of the instant case to warrant its consideration.

Of the possible methods of treating the substantial issues of speedy trial and sanity, the exclusion of delays attributable to inquiry as to an accused's sanity appears preferable. The sanity issue is given a "preferred rating" in military law. It can be raised at any stage of the proceedings and at each level of processing responsible officials are required to initiate an inquiry if any doubt as to an accused's sanity arises.[2] The application of any rule which could have the possible effect of lessening the willingness of responsible officials to raise the sanity issue or to fully inquire into the sanity issue when raised, is undesirable. An arbitrary application of speedy trial rules could conceivably have that effect. Equally undesirable would be measures which imposed upon medical personnel responsible for conducting sanity inquiries time limitations which might interfere with the full and complete inquiry. Thus a balancing approach should be required.[3]

These problems are recognized in the Federal Speedy Trial Act of 1974 which provides for the exclusion from speedy trial computation those periods "resulting from an examination of the defendant, and hearing on, his mental competency." 18 U.S.C. § 3161(h)(1)(A). A similar result is recommended in the ABA Standards, Speedy Trial, § 2.3(a) (1967). This result is also achieved in state statutes where mechanical time limitations have been imposed. *Id.* at page 26. Adoption of a like exclusion in military law appears both reasonable and justified. Such an interpretation would remove any possible chilling effect the speedy trial rule would have on resolution of the sanity issues.

As we have previously determined that the *Burton* rule does not apply, we need not determine whether the time required for the sanity inquiry constitutes an "extraordinary circumstance" or is specifically excludable as a delay for the "benefit of the accused."[4] However, we would favor the adoption of some exclusionary provision that could be applied in those cases involving sanity issues where it is not clear that the *Burton* period has ended.

### The Sanity Issue

Appellant has also assigned as error the refusal of the military judge to instruct on

2. Paragraph 121, MCM 1969 (Rev) provides in part: "If it appears to any commanding officer who considers the disposition of charges as indicated in 32, 33, and 35 or to any investigating officer (34), trial counsel, or defense counsel that there is reason to believe that the accused is insane (120d) or was insane at the time of the alleged offense (120b), that fact and the basis of the observation should be reported through appropriate channels in order that an inquiry into the mental condition of the accused may be conducted before trial." The nature of military service which generally requires the separation of young soldiers from their family who are normally the first to recognize changes in behavioral patterns, as well as the possibility of combat service and its consequent psychological problems, undoubtedly justify this cautious approach to the issue of sanity.

3. Although in a different context, the Court of Military Appeals noted the need for such a balancing of interests in the recent case of *United States v. Cruz-Rijos*, 1 M.J. 429 (June 25, 1976). "As noted by government counsel, speedy appellate disposition has been and remains a matter of particular concern to this Court. . . . However, in setting the appel-

late pace, we must not lose sight of the ultimate objective of the process, to assure a fair and orderly appellate review of trial proceedings. Speed for speed's sake is a hollow gesture if it results in a failure fully to comply with the congressionally-mandated review process . . . Stated differently, the integrity of the judicial process, both actual and perceived, must also be preserved. Thus, a balancing of these competing interests often is required."

4. Recognizing that the mandating of a new rule is unnecessary in the instant case, we will not attempt to do so, however, we strongly recommend to the Court of Military Appeals the adoption of such a rule by an interpretation of the *Burton* rule which allows time for the reasonable and orderly disposition of sanity issues. The desired result would be the removal of any hesitancy to further delay the proceedings for the purpose of resolving any doubt as to an accused's sanity. Any rule should obviously require the establishment of justification as a matter of record and be subject to judicial review at both the trial and appellate levels for any possible abuses.

the issue of insanity. The case at bar takes on an added dimension in that the instruction was jointly requested by both trial and defense counsel.

Several witnesses testified at trial concerning the mental responsibility of the accused. However, for this issue, we need only concern ourselves with the testimony of the three psychiatrists who testified for the defense.[5] Captain Ronald Hughes testified that:

"Private Hill was suffering from a mental condition which would lead [the witness] to believe that there could be some doubt as to his ability to distinguish right from wrong."

He further stated that the appellant ". . . was not able to adhere to the right."

Major Steven Griffith testified that he questioned whether the accused was able to determine right from wrong and adhere to the right. Finally, Major Robert Miller stated that the accused "probably didn't have the facilities to distinguish right from wrong."

The difficulty encountered is that the appellant's condition was the result of extreme intoxication caused by the ingestion of drugs and alcohol. It was the understanding of the military judge that such intoxication did not constitute a defense and therefore, no instruction on insanity was required. He based his understanding on the cases of *United States v. Hernandez,* 20 U.S.C.M.A. 219, 43 C.M.R. 59 (1970) and *United States v. Triplett,* 21 U.S.C.M.A. 497, 45 C.M.R. 271 (1972). He further reasoned that paragraph 145a, MCM 1969 (Rev), precluded the assertion of the insanity defense by the language:

"It is a general rule that voluntary drunkenness not amounting to legal insanity whether caused by liquor or drugs, is not an excuse for an offense committed while in that condition."

At several points in their testimony these witnesses described appellant's condition as "an organic brain syndrome," "an acute psychosis" and a "mental condition" which produced the conclusions of impairment indicated above. *United States v. Marriott,* 4 U.S.C.M.A. 390, 15 C.M.R. 390 (1954). Thus, the issue of sanity *per se* was raised and appellant was entitled to instructions *sua sponte* on that affirmative defense. *United States v. Mathis,* 15 U.S.C.M.A. 130, 35 C.M.R. 102 (1964); paragraph 7–4, DA Pam 27–9, Military Judge's Guide, 10 May 1968. The trial judge's failure to give an instruction as requested was error, but such instructional errors may be tested for prejudice. *United States v. Gaiter,* 23 U.S.C.M.A. 438, 50 C.M.R. 397, 1 M.J. 54 (1975); *United States v. Pierce,* 19 U.S.C.M.A. 225, 41 C.M.R. 225 (1970). We find no prejudice.

If the military judge had granted the joint request that he give a sanity instruction, he would have had to tailor it to the principles announced in *United States v. Ferguson,* 17 U.S.C.M.A. 441, 38 C.M.R. 239 (1968) and *Marriott, supra.* That instruction would have told the jury that an episode equivalent to legal insanity could have been produced by the voluntarily induced intoxication of the accused on the date of the offenses charged. As it was, the military judge did give several instructions, which required the jury to make specific findings about the nature and degree of appellant's intoxication. These issues were all resolved adversely to appellant under proper instructions concerning the Government's burden to prove mental capacity. Therefore, we are left with the proposition that a jury which found appellant both able to entertain a specific intent to steal and subject to normal standards of mental and emotional response under the rules of self-defense might have nonetheless found him legally insane. To state the proposition is to answer it. Whether this same result would follow in a case where the sanity

---

5. The Government presented no expert testimony of its own but sought to limit its role to that of cross-examiner. It relied upon the testimony of the victims and others as indicia of rational action by the accused to rebut the expert testimony. *See United States v. Morris,* 20 U.S.C.M.A. 446, 43 C.M.R. 286 (1971).

issue was not directly related to and dependent upon the question of voluntary intoxication, we do not decide.

We also consider the possibility of the non-verbatim quality of the record due to a malfunction of recording equipment. Prior to giving instructions, the military judge held several side bar conferences which were duly recorded. However, one of these conferences was not transcribed because of a mechanical failure. In summarizing the proceedings, the court reporter noted that "the defense counsel agreed with an instruction which in accordance with the previous request of defense counsel . . . the military judge delivered." It would seem that this would constitute a material omission had the defense counsel objected.[6] *See United States v. Sturdivant,* 1 M.J. 256 (January 9, 1976). Since the side bar involved an instruction requested by the defense and given by the military judge, the record is sufficient to qualify as a verbatim record within the meaning of Article 19, UCMJ.

We note that in his post-trial review that the staff judge advocate incorrectly stated the maximum sentence. In the context of this case the error was *de minimis* and appellant was not injured.

The other assigned errors have been considered and are found to be without merit.

The findings of guilty and the sentence are affirmed.

Judges DONAHUE and COSTELLO concur.

---

6. The accused's detailed defense counsel signed the record attesting to its authenticity.