**UNITED STATES**

**v.**

**Private E–2 Frederick O. RAINEY, 266–25–0580, U. S. Army, Battery C, 1st Cannon Battalion, Field Artillery School Brigade, U. . S. Army Field Artillery School, Fort Sill, Oklahoma.**

**CM 433454.**

U. S. Army Court of Military Review.

Sentence Adjudged 25 March 1975.

Decided 30 Dec. 1976.

---

Appellate Counsel for the Accused: CPT John R. Osgood, JAGC; LTC James Kucera, JAGC.

Appellate Counsel for the United States: CPT John E. Caulking, JAGC; CPT John F. DePue, JAGC; MAJ John T. Sherwood, Jr., JAGC.

Before JONES, FULTON and FELDER, Appellate Military Judges.

## OPINION OF THE COURT

FELDER, Judge:

The members of a general court-martial convicted the appellant of murder while perpetrating sodomy and forcible sodomy in violation of Articles 118 and 125, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 918 and 925. He was sentenced to a dishonorable discharge, confinement at hard labor for life, forfeiture of $300.00 a month for life and reduction to the grade of Private E–1. The convening authority approved the sentence.

The evidence presented by the Government indicates that on the night of 21 November 1974 Private Anthony R. Jauriqui was forced to commit sodomy with the appellant and other soldiers in the company dayroom. Private Muriel L. Cole held Jauriqui while the appellant sodomized him. To keep Jauriqui quiet, the appellant stuffed paper in his mouth and Cole placed his hand over his mouth and nose. Jauriqui collapsed and his body was concealed in a cabinet in the dayroom. It was discovered three days later. The appellant was apprehended two days after the body was discovered.

The trial on the merits began 107 days after the appellant was confined and lasted for 13 days. He now complains, as he did below, that his right to a speedy trial was violated because he was not tried within 90 days; that there was no justification for a delay beyond that period; and that the Government failed to adequately respond to his demand for an immediate disposition of his case. *United States v. Burton*, 21 U.S.C. M.A. 112, 44 C.M.R. 166 (1971); *United States v. Marshall*, 22 U.S.C.M.A. 431, 47 C.M.R. 409 (1973). We shall assess the merits of his contentions.

On the 86th day of pretrial confinement, an Article 39(a) session was convened to arraign the appellant and to schedule the litigation of defense motions. At another such session held on the 92nd day of pretrial confinement, twelve motions were argued and ruled upon by the trial judge. They involved such complex legal issues as the

denial of the appellant's right to a speedy trial, the lack of jurisdiction by the military to try him, the multiplicity and vagueness of the charges, the disclosure of the Government's evidence, the request for a new investigation pursuant to Article 32, UCMJ; the restriction of the activities of the news media in the court room and others.[1] Several witnesses testified and numerous documents were examined. The session lasted over seven hours and is transcribed on 147 pages. (We consider the second session to have been conducted on the 87th day of pretrial confinement for *Burton* purposes because the defense counsel requested a 5-day delay in the completion of the Article 32 investigation. *United States v. Driver*, 23 U.S.C.M.A. 243, 49 C.M.R. 376 (1974)). After all the pretrial motions were resolved, the trial counsel explained that he was not prepared to proceed with the trial on its merits because his witnesses were not available and the Government preferred to prosecute Private Cole[2] before the appellant. The defense counsel stated that he was ready to proceed immediately. The trial was delayed until the 107th day of pretrial confinement, at that time the appellant pleaded not guilty.

The appellant contends that the *Burton* presumption applies because while he was confined, it took the Government more than 90 days to bring him to trial and to reach a verdict on the findings. The reason for his assertion is that the essence of the presumption and the concept of Article 10, UCMJ,[3] is that an accused should not unnecessarily be confined while his guilt remains judicially undetermined. *United States v. Marell*, 23 U.S.C.M.A. 240, 241, 49 C.M.R. 373, 374 (1974). The appellant concedes, however, that the sheer length alone of some trials that begin within the 90-day

period might be an extraordinary circumstance within the meaning of *United States v. Marshall, supra*, that would justify a verdict not being reached within that period. We agree with his opinion in this regard but that question is not an issue in this case.

The Government insists that by conducting the Article 39(a) sessions, which involved matters of substance, the case was brought under judicial scrutiny and thus the dangers toward which *Burton* and Article 10 are directed were dissipated. Consequently, the *Burton* presumption is inapplicable because those sessions were held within the 90-day period. *United States v. Hill*, 2 M.J. 950 (A.C.M.R. 30 July 1976).

Article 10, U.C.M.J., mandates that measures be taken immediately to try or release an accused who is in pretrial confinement. When that confinement exceeds 90 days, a rebuttable presumption arises that the Government has violated Article 10 to his prejudice. *United States v. Burton, supra*. An Article 39(a) session conducted within 90 days that results in findings of guilty ends the Government's accountability under *Burton*. *United States v. Marell, supra*. However, according to Judge Cook, with whom I agree, an Article 39(a) session that deals with matters other than the accused's guilt is not the functional equivalent of a trial, and does not end the Government's period of accountability. Any delay caused by a pretrial hearing conducted for the benefit of the accused, as it is here, is excluded from the period for which the Government must account. The period of exclusion is for the reasonable time required to schedule the hearing, to conduct it, and to execute orders of the court that result from the hearing. *United States v. Beach*, 23 U.S.C.M.A. 480, 482, 50 C.M.R. 560, 562, 1 M.J. 118

1. The trial judge deferred final rulings on the admissibility of the appellant's pretrial statement and evidence resulting from a search of his property.

2. Private Cole was charged with the same offenses as the appellant. The trial counsel anticipated it would have taken approximately ten days to complete his case; however, Cole pleaded guilty and the trial was concluded in

two days. Afterwards, Cole was ordered by the convening authority to testify against appellant.

3. When any person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken to inform him of the specific wrong of which he is accused and to try him or to dismiss the charges and release him. (10 U.S.C. § 810).

(1975) (dissenting opinion).[4] This interpretation[5] would eliminate the need to "explore the shadings of difference that might be legally significant in the outcomes of Article 39(a) sessions." *United States v. Towery*, 51 C.M.R. 727, 728, 2 M.J. 468, (A.C.M.R.1975) (decision vacated and remanded on other grounds by Order dated April 28, 1976).

Applying that reasoning to this case, two days would be excluded as attributable to the pretrial hearings. Additionally, a five-day delay in the Article 32 investigation and a two-day delay in the trial, both requested by the defense counsel, result in a total of nine days that is excluded from the Government's accountability. This leaves 98 days for the Government to justify. A delay of that length makes the presumption of prejudice operative and imposes upon the Government the heavy burden of demonstrating diligence in the prosecution of this case.

■ To determine whether the delay beyond 90 days was justified, we must again refer to the facts of this case. The incident occurred on the day the members of the unit to which the appellant, the victim and three co-accused were assigned, graduated from advanced individual training at Fort Sill, Oklahoma. The next day most of the students departed either in a leave status or for their next assignments throughout the continental United States, Hawaii, Germany and Korea. After the body of the victim was discovered, the appellant was apprehended in Miami, Florida, and returned to Fort Sill, where he was confined. A military judge was appointed 13 days after the appellant was apprehended to conduct an investigation in accordance with

Article 32, U.C.M.J., 10 U.S.C. § 832. He decided to conduct a joint investigation because essentially the same evidence was required in cases involving the appellant and three co-accused. The investigation began immediately but the first formal hearing was delayed until 43 days after pretrial restraint was imposed. The delay is attributable to several factors.

First, although there presumably was a sufficient evidentiary basis for referring the case to trial, the investigating officer determined it was necessary to summon approximately twenty witnesses to Fort Sill. He had been furnished with sworn statements made by potential witnesses "to various and sundry CID agents here at Fort Sill or in other parts of the world."[6] The investigating officer initially attempted to secure the presence of the witnesses by having them returned to Fort Sill in a temporary duty status. His efforts were unsuccessful because of the lack of local installation funds. His next approach was to seek cancellation of the movement orders of the witnesses and reassign them to Fort Sill. He also failed in that endeavor. Finally, on the 38th day of pretrial confinement the investigating officer received confirmation that the witnesses would not be made available; so he scheduled the first hearing on the 43rd day of pretrial confinement. Six hearings were conducted in the absence of many witnesses during the next twelve days. One day before the investigating officer was prepared to conclude his inquiry, the defense counsel requested a five-day delay until the 62nd day of pretrial confinement to await the return of a witness that was on leave. The last hearing was held at that time.

4. The majority in *Beach* dismissed the charge because justification for the delay beyond 90 days was not demonstrated by the Government. It did not address the question of the relationship between an Article 39(a) hearing and the Government's obligation to bring the case to trial within 90 days.

5. In *United States v. Hill*, 2 M.J. 950 (A.C.M.R. 30 July 1976), Senior Judge Clause urged a similar interpretation of the *Burton* rule, which would exclude from its computation the

time resulting from the disposition of the sanity issue.

6. His examination need not be limited to the list of witnesses and documents furnished to him and in the absence of evidence to the contrary, we assume the witnesses he requested were necessary to conduct a thorough and impartial investigation and not solely to perfect a case against the appellants. Paragraph 34a, Manual for Courts-Martial, United States, 1969 (Revised edition).

Secondly, determinations of the cause and time of death were crucial in the investigation but the autopsy report was not available until about the 38th day of pretrial confinement. The victim's body was initially taken to a military hospital at Fort Sill. Because of its advanced state of decomposition and putrefaction, it was transferred to a hospital in Oklahoma City where the autopsy was performed by a civilian medical examiner. The toxicological and other tests normally associated with an autopsy were also conducted by civilians. Although the Government was in constant contact with the medical examiner, it had no control over timely preparation of the autopsy report.

Thirdly, the chemical analysis of numerous items that were hand carried to the criminal investigation laboratory at Fort Gordon, Georgia, was not received until the 38th day of pretrial confinement. The examinations at the laboratory included the analyses of dust and debris, wood fragments, fingerprints, hair samples, clothing and other stained material, and a host of other items of vital evidentiary value.[7]

The report of investigation, which contained 85 exhibits, was submitted to the special court-martial convening authority on the 65th day of pretrial restraint, which was only three days after the last hearing was held. Four days later it was forwarded to the staff judge advocate, who prepared the pretrial advices in this case and the cases involving the co-accused. The charges were referred to trial on the 76th day of pretrial confinement and, as mentioned earlier, the appellant was arraigned ten days afterwards.

There were no appreciable delays in the processing of this case after the last Article 32 hearing to arraignment. In fact, it was processed with remarkable alacrity during that period. The delays that occurred prior to that time resulted from the complexity surrounding the commission of the offenses; the unavailability of witnesses located in various and distant places; the securing of the autopsy and laboratory reports; the necessity to conduct six Article 32 hearings; and a continuance granted to the defense counsel. Under the circumstances of this case, these were extraordinary problems with which the investigating officer had to deal. It is obvious to us that the investigation was conducted by a well-qualified officer, as expeditiously as possible under the circumstances, and consistent with statutory purpose.

We now consider the 21-day period after arraignment to trial, to determine whether that delay was justifiable. During that period, another Article 39(a) session was held and the defense counsel requested a two-day delay for personal reasons. Therefore, three days are chargeable to the defense. Also, the presiding judge and trial counsel assigned to this case were involved in the two-day trial of Private Cole. It is true the appellant's trial could have commenced a week earlier had he been tried instead of Private Cole. The test, however, is not whether the appellant could have been tried earlier. Rather, it is for us to view the entire period of delay (107 days) and determine whether the Government, encountering exceptional conditions, shouldered its responsibility of showing diligence. *See United States v. Marshall, supra,* 22 U.S.C.M.A. at 434, 47 C.M.R. at 412; *United States v. Montgomery,* 50 C.M.R. 860, 862, (A.C.M.R.1975).

We are satisfied that because of extraordinary circumstances this case required more than the normal time to prosecute (*United States v. Marshall, supra*); that the unusual problems the Government confronted caused the delay of 107 days (*United States v. Henderson,* 24 U.S.C.M.A. 259, 51 C.M.R. 711, 1 M.J. 421 (1976)); and that the heavy burden established by *Burton* was met by the exercise of due diligence.

One other aspect of the speedy trial issue warrants our comments. After all the pre-

7. The criminal investigators at Fort Sill continually called the laboratory to expedite the examinations. While waiting for the laboratory and autopsy reports, they continued their investigation. Information that they gathered during the interim was given to the investigating officer, who furnished it to the defense counsel.

trial motions were litigated at the second Article 39(a) session, the trial judge asked the defense counsel, ". . . what's your position concerning a trial date?" His reply was, ". . . we would request trial as soon as possible." The appellant treats that answer as a demand for speedy disposition of the charges to which the Government was obligated to respond. *United States v. Burton, supra,* 21 U.S.C. M.A. at 118, 44 C.M.R. at 172. This mandate is commonly referred to as the second facet of *Burton. United States v. Johnson,* 23 U.S.C.M.A. 397, 401, 50 C.M.R. 279, 283, 1 M.J. 101 (1975). Be that as it may, the trial counsel explained the reasons he could not proceed to trial immediately and the military judge scheduled the case for trial as early as possible under the circumstances. In our opinion, the defense counsel's "request" was not ignored and the purpose for the second facet of *Burton* was satisfied.

The findings of guilty and the sentence are affirmed.

FULTON, Judge, concurring in part and dissenting in part:

■ I concur in the view that the Government has rebutted the presumption established in *United States v. Burton,* 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971). Investigative and prosecutorial officials were faced with unusual and extraordinary circumstances. The record discloses that charging authorities, the Article 32 investigating officer, the staff judge advocate, and the military judge all displayed commendable concern for the rights of appellant and demonstrated so by their actions.

■ Not concurring in the view that neither of the Article 39(a) sessions in this case tolled the period giving rise to the *Burton* presumption, I prefer to decide the case on alternate grounds: in my view, the second Article 39(a) session, which occurred on the 92nd day of pretrial confinement (computed as in *United States v. Manalo,* 24 U.S.C. M.A. 297, 52 C.M.R. 8, 1 M.J. 462 (1976)) and the 87th day of the Government's accountability, tolled the *Burton* presumption.

■ Although proceedings under Article 39(a) are a session of the court and a part of the trial, Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a); Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 53*d*, not all Article 39(a) sessions toll the *Burton* presumption. *See United States v. Beach,* 23 U.S.C.M.A. 480, 50 C.M.R. 560, 1 M.J. 118 (1975); *cf. United States v. Marell,* 23 U.S.C.M.A. 240, 49 C.M.R. 373 (1974) (determination of guilt tolls *Burton* period); *United States v. Towery,* 51 C.M.R. 727, 2 M.J. 468 (A.C.M.R. 1976) (arraignment, plea, assembly of court with counsel prepared and witnesses available constitute beginning of trial and toll *Burton* period) (alternative holding). Instead, it is the function and result of the particular Article 39(a) session that are determinative. *See United States v. Hill,* 2 M.J. 950 at 951 (A.C.M.R. 30 July 1976).

Although the question of guilt or innocence was not addressed at the Article 39(a) session on 26 February (as in *Marell*), many issues of substance were addressed pursuant to motions made by appellant. Although the prosecution could not proceed at the close of the session (as in *Hill* and *Towery*), this was due to the fact that not all of the witnesses had been assembled—a matter not fully within the control of the prosecuting command under the circumstances of this case. The military judge was placed in effective control of the scheduling of further proceedings. While acceding to the Government's request to try first a co-accused when the witnesses were assembled, he commanded the Government to proceed then with appellant's trial should the co-accused's trial not occur as scheduled. Accordingly, substantive and substantial issues presented by appellant were litigated at the Article 39(a) session and, as stated in *Hill,* the accused had come under judicial scrutiny and the dangers protected against by Article 10, Uniform Code of Military Justice, 10 U.S.C. § 810, thereby had been dissipated. *United States v. Hill,* 2 M.J. at 952.

JONES, Senior Judge, concurs in the opinion of Judge FULTON.